**T. E. HARDEN, Jr., Appellant,**

v.

**COLONIAL COUNTRY CLUB, Appellee.**

No. 2–81–005–CV.

Court of Appeals of Texas,
Fort Worth.

May 13, 1982.
Rehearing Denied June 17, 1982.

Norman & Bates and Gerald A. Bates, Fort Worth, for appellant.

Godfrey, Decker, McMackin, Shipman, McClane & Bourland and Berl E. Godfrey, Fort Worth, for appellee.

Before MASSEY, C. J., and SPURLOCK and JORDAN, JJ.

OPINION

JORDAN, Justice.

This is an appeal from a purported class action suit instituted by appellant on behalf of himself and all others similarly situated against appellee, Colonial Country Club for a declaratory judgment. The purpose of the suit was to construe certain provisions of the by-laws of appellee, a non-profit association, to determine the legality of certain rules, regulations and policies of the Board of Governors of appellee. Appellant also sought damages for appellee's alleged conversion and tortious interference with appellant's alleged contract with a third person.

Both parties filed separate motions for Summary Judgment. The trial court entered a summary judgment for both. Appellant Harden appeals on seven points of error and appellee appeals on two cross-points of error.

We affirm the granting of the summary judgment for defendant/appellee. We reverse judgment in favor of appellant and render summary judgment for appellee on the entire case.

Before reciting the facts necessary to a decision in this case we hold that this suit is not a class action suit, is not to be considered as such, and the holding of this court is therefore confined to the facts and the parties involved in this case only. While the suit was originally filed as a class action, there was no hearing held on the question of whether or not it was a class action suit. There was, therefore, no evidence on which to base any ruling that it was such, and no actual ruling or holding that it was.

■ Class actions are permitted under Rule 42, Texas Rules of Civil Procedure, but in order to maintain such a suit certain matters must be shown and certain requirements met. A party, in order to create a class action, must plead the required elements of a class action found in the rule and prove those elements at a hearing set as soon as practicable after the petition is filed. *Duncan v. Dripping Springs Independent School District, et al.,* 612 S.W.2d 644 (Tex.Civ.App.—Austin 1981, no writ).

Colonial Country Club, as do most such institutions, has several different kinds of memberships. The memberships involved in this appeal are resident and regular memberships. A resident membership entitles the holder thereof to all of the club's privileges, including voting, holding office and the use of the golf course. A regular membership entitles the holder only to the use of the club facilities, including the dining room, swimming pool, and other facilities, but that type of member is unable to vote, hold office, or use the golf course.

Under article 11(a) of the by-laws and policies of the club set by the Board of Governors, a resident membership may be sold or transferred under the following conditions: (1) the Transferee has first been approved in the manner provided by the Board of Governors as an acceptable member; (2) all indebtedness of any kind or character of the member to the club has first been paid and satisfied; (3) *a transfer fee to be fixed by the Governors from time to time is paid simultaneously with the transfer of said certificate.* (Emphasis ours.) The first and third provisions of these by-laws are printed on the face of each membership certificate.

Colonial Country Club is widely known for its Championship golf course and is the home every year of the Colonial National Invitation Tournament. The demand,

therefore, for resident memberships, which include the privileges of using the golf course, is extremely high. In order to preserve the quality of play for its members and the physical condition of the golf course itself, the Board of Directors of Colonial has chosen to limit the number of resident memberships, which, at the time in 1979 when appellant tried to transfer his resident membership to Haas, was set at 750. As a result, there is always a waiting list for resident memberships, and this is provided for in article 11(b) of the by-laws.

Appellant Harden became a resident member of Colonial in 1959 and in 1979 attempted to sell and transfer that resident membership to one James Haas, who was at that time a regular member of the Country Club. Harden, who had not read the charter or by-laws of the Country Club, advised Haas that he would sell him his membership for $2500 and that by paying an additional $500.00 as a transfer fee to the Club, he could gain immediate admittance as a resident member. This was not the policy of the Club and was not in accordance with the by-laws above quoted and Club policy. Upon inquiry to the Club Haas was advised that he would have to pay the sum of $4500.00 for the usual cost of a resident membership plus a $500.00 transfer fee and that he would then have to remain in his place on the waiting list which had been established for those wanting to be admitted to Colonial as resident members. Haas, already a regular member, had been on the waiting list for the resident membership for some time.

When advised of the club's by-laws and policies with respect to the sale or transfer of a resident membership, Haas then declined to go through with the purchase of appellant's resident membership, and this suit was brought by appellant, seeking to have the club's by-laws, rules and policies denying Haas' immediate resident membership declared invalid and to have the transfer fee declared unreasonable and invalid, and for damages.

Appellant, when he became a resident member in 1959, knew, or should have known, of the by-laws, rules and policies governing the sale or transfer of a resident membership. At that time, 1959, the transfer fee set by the Board of Governors for sale of a membership, was minimal. Since that time, however, the Board, within the powers conferred by the by-laws, and because of ever increasing demands for use of the golf course and constant and consistent increases in the costs of operating the club and the golf course, had, by 1979, increased the cost of a transferred membership to a total of $5,000.00, which was the cost of a membership purchased directly from the club itself. By accepting membership in the club, Harden, appellant, accepted the by-laws, rules and policies set by the duly elected Board of Governors.

Since this is a Summary Judgment case we must look closely at the whole record to determine if there is any genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. 4 McDonald, Texas Civil Practice, § 17.26.2, p. 130, *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970). We hold that there are no issues of fact and that this is a case for summary judgment.

Article 11(b) of the by-laws, on the Transfer or Assignment of Memberships, establishes a waiting list of applicants for "membership in the Club." It does not distinguish membership classifications in this by-law, which also provides that the purchaser of a membership from a member in good standing shall be entitled to immediate admittance to the club assuming he meets the other qualifications set out in article 11(a). This provision does not designate the type of membership the purchaser shall be given.

In his first six points of error appellant attacks the holding of the trial court that the transfer fee charged by appellee to purchasers of memberships from current club members, which fee under the by-laws was set by the Board of Governors from time to time, was reasonable. Appellant contends that the question of reasonableness of the fee is either a fact question or that the transfer fee was unreasonable as a matter

of law. Appellant also argues that the by-laws which permit the Board of Governors to set transfer fees in its discretion is invalid and illegal.

■The trial court granted appellee's motion for summary judgment on the ground that the transfer fee set by the Board of Governors was reasonable as a matter of law. The court also granted appellant's motion for summary judgment on the ground that the policy of the Board in denying immediate admittance to purchasers of memberships was in violation of the Club's by-laws. In this we think the trial court erred and that it should have denied appellant's motion for summary judgment on the case as a whole. The question of the reasonableness of the transfer fee and the policy of the Club in denying immediate admittance to purchasers of memberships from other members is immaterial because of the policy of the courts in the management of the affairs of a private, non-profit corporation such as Colonial. We think it is the right of a private, non-profit organization to manage, within legal limits, its own affairs without interference from the courts. See *Hoey v. San Antonio Real Estate Board*, 297 S.W.2d 214 (Tex.Civ.App.—San Antonio 1956, no writ); *Brotherhood of Railroad Trainmen v. Price*, 108 S.W.2d 239 (Tex.Civ.App.—Galveston 1937, writ dism'd); *Combs v. Texas State Tchers. Ass'n*, 533 S.W.2d 911 (Tex.Civ.App.—Austin 1976 (writ ref. n. r. e.).

Appellee is a non-profit organization organized and operated under the Non-Profit Corporation Act of the State of Texas, as opposed to a profit-oriented corporation. Article 1396–1.01 et seq., V.A.T.S.Bus.Corp. Act.

Appellant maintains that his membership in Colonial as reflected by his membership certificate constitutes a "valuable property right" that necessarily compels court intervention to set aside the transfer fee required by appellee. However, it has been held that such a membership certificate in a voluntary non-profit corporation such as Colonial does not afford appellant such a "valuable property right", and the involvement of a property right does not necessarily authorize judicial intervention in the absence of arbitrariness, fraud or collusion. Lone Star Lodge No. 1, 935, *K & L of Honor, v. Cole*, 62 Tex.Civ.App. 500, 131 S.W. 1180 (1910, writ ref'd), 7 C.J.S. Associations, Sec. 8, page 40.

There is no allegation or proof that appellee's interpretation of its by-laws by setting the transfer fee in this case was arbitrary, fraudulent or capricious. To the contrary, the history of interpretation of the Board of Governors is in compliance with its by-laws, according to the summary judgment proof.

The membership certificate issued to appellant states on its face: "Transfer is further conditioned upon the payment of such transfer fee as the Board of Governors may fix from time to time." Clearly, the Board of Governor's action in setting the transfer fee was in accordance with the by-laws and certificate of membership as pointed out above.

■ The right of a voluntary club or association to interpret its own organic agreements, such as its charter, its by-laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them, and an individual, by becoming a member, subjects himself, within legal limits, to the association's power to administer as well as its power to make its rules. *Dallas Athletic Club Pro. Com. v. Dallas Athletic Cl.*, 407 S.W.2d 849 (Tex.Civ. App.—Austin 1966, writ ref'd n. r. e.).

■ The courts will not interfere with the internal management of a voluntary association so long as the governing bodies of such association do not substitute legislation for interpretation, and do not act totally unreasonably or contravene public policy or the laws in such interpretation and administration. *Brotherhood of Railroad Trainmen v. Price, supra*. In this often cited case, it was stated:

"Courts are not disposed to interfere with the internal management of a voluntary association. The right of such an organization to interpret its own organic agreements, its laws and regulations, after

they are made and adopted, is not inferior to its right to make and adopt them. And a member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules. To say that the Courts may exercise the power of interpretation and administration reserved to the governing bodies of such organization would plainly subvert their contractual right to exercise such power of interpretation and administration ... Without such latitude of action, associations organized to promote the legitimate welfare of its members would be deprived of the power to do so." See also: *Frey v. DeCordova Bend Estates Owners Ass'n,* 632 S.W.2d 877, (Tex. App.—Ft. Worth, April 22, 1982) (not yet reported).

■ The policy of non-intervention in the affairs of private, non-profit associations, as shown above, is a well-established and a wise and necessary policy. Without such policy, clubs such as appellee simply could not function. If the courts were to interfere everytime some member, or group of members, had a grievance, real or imagined, the non-profit, private organization would be fraught with frustration at every turn and would founder in the waters of impotence and debility. For instance, if the law required a court and jury, every time a member of the Club desired to sell his membership under the Club's rules and by-laws, to determine whether the fee established at that time for such sale by the Board of Governors was reasonable or not, sales of memberships by members would be impossible. To countenance such an interference would lead to futility and the possible cessation of operations. We hold that the actions of the Board of Governors of appellee, so long as they are not illegal, not against some public policy, not arbitrary, capricious, or fraudulent, are proper actions, permissible and binding on the members of this Club.

We also hold that there is no question of fact to be decided in this case and that as a matter of law appellee is entitled to a summary judgment on the case as a whole, for the reasons above stated. Appellant's first six points of error are therefore overruled.

■ In his seventh point of error appellant urges error on the part of the trial court in refusing him recovery of attorney's fees under article 2226, V.A.T.S.Civ.St. In view of the fact summary judgment was against him, appellant would not have been entitled to attorney's fees. Moreover, we do not think attorney's fees are recoverable in a case of this nature, in any event. While it is true that there was a contract between the member, Harden, and the Club, we believe the intent of the legislature, in its recent amendments to article 2226, was to provide for recovery of attorney's fees only in suits where persons wronged as a result of a breach of contract were forced to bring suit to collect damages as a result of such breach. In this case suit was brought on the Club's by-laws and policies. We do not consider this a breach of contract suit as contemplated by the legislature.

We need not discuss appellee's two cross-points of error complaining of the trial court's failure to grant its motion for summary judgment on the case as a whole because we have already agreed with its position and have granted such summary judgment.

Summary judgment is rendered for appellee on the entire case for the reasons stated. Costs of court are assessed against appellant.