**Ramon KORRODY and Unicorn Construction, Inc.,
Appellants,**

v.

**Nita F. MILLER, Appellee.**

**No. 04–02–00914–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 5, 2003.

Michael G. Colvard, Paul A. Fleck, Martin, Drought & Torres Incorporated, San Antonio, for appellant.

Ellen B. Mitchell, Diann M. Bartek, Elizabeth Parks, Cox, Smith Incorporated, San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

This case involves a dispute over the characterization of an oral financing agreement between Nita Miller ("Miller") and Ramon Korrody ("Korrody"). In challenging the district court's judgment, Korrody argues that the court erred in its determination that Korrody breached the agreement and in denying his counterclaim for usury. We overrule Korrody's issues and affirm the judgment of the trial court.

### BACKGROUND

Korrody is the president of Unicorn Construction, Inc., a construction business. In order to meet the financial obligations of his business, Korrody entered into an oral financing agreement with Miller who was doing business as Elite Capital Group. Miller contends that she agreed to "factor" Korrody's accounts receivable. Upon collection of the receivables, Korrody was obligated to repay Miller the amount that had been advanced to him as well as a designated fee. Korrody, by contrast, contends that Miller agreed to provide him a loan or line of credit.

Miller sued Korrody for failing to comply with their oral factoring agreement after Korrody refused to remit payments

in excess of $140,000. Korrody denied liability and filed a counterclaim for usury asserting that the financing agreement with Miller was a line of credit which assessed interest in excess of the legal amount permitted under the Texas Finance Code.

Trial was to the court which found in Miller's favor and entered judgment in the amount of $142,938.59 in actual damages and $33,531.25 in attorney's fees. The judgment further ordered that Korrody take nothing on its counterclaim.

### ANALYSIS

In his first two issues, Korrody challenges the sufficiency of the evidence that the oral agreement was a factoring relationship and not a loan or line of credit. The parties do not dispute whether a financial relationship is a sale of accounts receivable (factoring) or a loan which must be determined by ascertaining the intention of the parties as disclosed by the contract, attending circumstances, or both. See Johnson v. Cherry, 726 S.W.2d 4, 6 (Tex.1987). So important is the parties' intent that section 306.103 of the Texas Finance Code provides, "the parties' characterization of an account purchase transaction as a purchase is conclusive that the account purchase transaction is not for the use, forbearance, or detention of money." See TEX. FINANCE CODE § 306.103(b)(Vernon Supp.2003). In other words, if the parties intend to enter an account purchase transaction (such as a factoring agreement) and characterize the transaction as such, it cannot be a loan or line of credit. Id.

In reviewing a legal sufficiency challenge, we consider only the evidence which supports the district court's findings. Lewelling v. Lewelling, 796 S.W.2d 164, 166 (Tex.1990). If there is more than a scintilla of evidence to support the finding, the

no evidence challenge must fail. Id. In considering the factual sufficiency of the evidence supporting a finding, we review all the evidence and reverse only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986).

Evidence developed at trial showed that Miller's business relationship with Korrody began when she worked at Merit Financial Inc. ("Merit"). Korrody and Merit had a factoring agreement where Merit would advance funds to Korrody in exchange for the ability to purchase Karrody's account receivables from the San Antonio Development Association ("SADA"). Miller managed Korrody's account on behalf of Merit. At trial, evidence was presented that Merit typically required Korrody as a borrower to execute various documents before making an advance. Additionally, third parties such as SADA were notified in writing to make their payments in the name of the borrower (Korrody), but transmit them directly to Merit. At times, Korrody would make oral requests for Miller to factor funds without the completion of the requisite paperwork. With the approval of her supervisor, Miller advanced the requested funds without following Merit's general procedures regarding the execution of documents.

Miller ultimately left Merit and formed Elite Capital, with Korrody requesting that she continue to service his account. Miller drafted the required contract documents which contained essentially the same language used by Merit in its factoring relationship with Korrody, but those contract documents were never signed by Korrody. To minimize transfer costs, Miller and Korrody agreed that third-party payments would initially be received by Korrody, who would then deposit them into an account maintained by Miller. In

May of 2000, Korrody failed to remit approximately $140,000, representing the partial payment advanced by Miller for receivables.

In his no-evidence challenge, Korrody contends that Miller never exercised "ownership" over the accounts receivable as would be expected under a factoring relationship. Specifically, Miller never notified SADA in writing to make payments directly to her and never held the accounts receivable. Korrody maintains the absence of executed contract documents, the failure to notify SADA of the assignment, and the fact that SADA made payments to Korrody and not Miller demonstrates Miller's departure from the standards typically followed in a factoring agreement, and defeat her claim. Certainly, if left uncontroverted and unexplained, these factors might be persuasive evidence of loans secured by pledges of the contracts rather than purchases of the contracts at discount. *A.B. Lewis v. National Invest. Corp. of Houston,* 421 S.W.2d 723, 728 (Tex.Civ.App.-Houston [14th Dist.] 1967, writ ref'd n.r.e.).

In reviewing the record, however, the evidence is legally and factually sufficient to support the finding that the differences in the procedures used was at Korrody's request and for his benefit. Miller testified that Korrody asked her to refrain from executing their contract documents and from notifying SADA about their new agreement until his prior relationship with Merit Financial had fully terminated. Therefore, there was a plausible explanation as to why the procedures Miller used at Elite Capital differed in some respects from the Merit procedures. The record also supports the conclusion that Korrody understood that standard procedures are not always followed when parties establish a factoring relationship. In his testimony, Korrody admitted that he previously had a factoring agreement with Merit and that he understood the mechanics involved in factoring receivables. Additionally, Korrody acknowledged that he would occasionally ask Merit to factor his accounts without the completion of the required documentation, and Merit would accommodate him. There is more than sufficient evidence in the record that Miller and Korrody engaged in the same basic financial relationship as they had at Merit. Korrody informed Miller of the amounts of the invoices he wished to factor and faxed copies of those invoices to her on a monthly basis. Miller obtained the invoice number and the name of the specific job. Miller then prepared an accounts receivable verification report, which also contained the date on which the invoice was factored, the amount advanced, and the reserve. The amount Miller advanced Korrody directly correlated to the amount stated on the verification report and invoice. Korrody would then notify Miller when he received payment on his invoices from SADA. Miller would then generate an adjustment sheet or reserve fee history report to show how much Korrody was to send her under their agreement (the amount of the advance plus the calculated fee).

The record also contains ample evidence that Miller and Korrody intended to engage in factoring rather than a loan relationship and acted accordingly. Although Korrody testified that Miller referred to their relationship as a line of credit and he had no reason to believe otherwise, Miller disputed this testimony. She testified that Korrody requested that she continue to factor his receivables and that they never discussed a loan, line of credit, or payment of interest. Toward that end, she drafted a contract that was substantially the same as Merit's. Furthermore, Miller and Korrody had a pre-existing financial relationship which Korrody admits was for factor-

ing rather than a loan. As the trier of fact, the district court was free to conclude that Miller's testimony was more credible. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). And as an appellate court, we afford due deference to the district court's resolution of the conflicting evidence. *See Carr v. Jaffe Aircraft Corp.* 884 S.W.2d 797, 799, 802–03 (Tex.App.-San Antonio 1994, no writ). We find ample evidence to support the district court's findings that a factoring agreement existed. The mere existence of Korrody's contrary testimony does not render the trial court's judgment manifestly unjust. Therefore, we overrule Korrody's first two issues.

In his third issue, Korrody asserts that because the oral agreement is a loan, it exceeds the lawful rate of interest allowable under Texas law. *See* TEX. FIN.CODE § 302.001(a)(b). At a minimum, a claim based on usury requires the finding that the transaction was a loan. *Catalina v. Blasdel,* 881 S.W.2d 295, 296 (Tex.1994); *Bexar County Ice Cream Co. v. Swensen's Ice Cream Co.,* 859 S.W.2d 402, 407 (Tex. App.-San Antonio 1993, writ denied). Accordingly, because we affirm the trial court's finding that the agreement was a factoring relationship and not a loan, we do not reach appellant's third issue.

### CONCLUSION

For the reasons stated above, we overrule Korrody's three issues and affirm the judgment of the trial court.