**Bertie Carlyn POTTER, Jr., Appellant,**

v.

**GMP, L.L.C., Appellee.**

**No. 04–03–00482–CV.**

Court of Appeals of Texas,
San Antonio.

June 2, 2004.

Lewin Plunkett, Cathy J. Sheehan, Plunkett & Gibson, Charles M. Jefferson, Law Office of Charles M. Jefferson, Sara E. Dysart, San Antonio, for appellant.

Ruth G. Malinas, William H. Ford, Christopher J. Deeves, Bradley S. Wilder, Ball & Weed, P.C., San Antonio, for appellee.

Sitting: PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

PHYLIS J. SPEEDLIN, Justice.

Bertie Carlyn Potter, Jr. ("Potter") appeals a judgment rendered against him in favor of GMP, Limited Liability Company ("GMP"). We affirm.

## BACKGROUND

In August of 1999, Potter, Steve Miller ("Miller"), and Larry Grothues ("Grothues") formed three interrelated business entities to purchase 300 acres of land in Medina County, for a concrete quarry. Two of the entities were limited partnerships, Alamo Reserve, Ltd. ("Alamo, Ltd.") and Geronimo Creek, Ltd. ("Geronimo, Ltd."). Both limited partnerships had the same ownership structure. Potter owned the majority interest with 39.51%, Grothues and Miller each owned 22.245%, and two other individuals owned 15%. The third entity, GMP, was a newly created limited liability company owned by Potter (49%), Grothues and Miller (25.5% each). GMP served as the general partner in the two limited partnerships, with a 1% ownership interest.

In April 2001, GMP sought additional operational funds for the quarry venture and made a capital contribution call on Potter, Grothues and Miller. Potter objected and refused to make a contribution. Ultimately, GMP sued Potter for breach of contract, maintaining that the regulations of GMP provide that if a majority of the members agree to the capital call, then it is mandatory on all. Potter, in turn, filed suit against Miller for breach of fiduciary duty and against both Grothues and Miller for fraud and negligent misrepresentation. The suits were consolidated and tried to a jury. The jury found that Potter agreed to make additional capital contributions to GMP, and that he failed to comply with the agreement, awarding GMP $189,595.00 in damages. The jury also found that Miller breached his fiduciary duty, and awarded Potter $65,000.00 in damages. The jury did not find that Grothues or Miller committed fraud or negligent misrepresentation. This appeal followed and is limited to the judgment rendered against Potter on GMP's capital contribution claim and the attorney's fees awarded in connection with that claim.

## CONTRACTUAL AMBIGUITY

■ The central issue in this appeal is whether the regulations of GMP allow the limited liability company to make a mandatory capital contribution call on all of its members. Potter maintains the regulations provide that capital contributions are not mandatory on members who object. Potter further argues the regulations are not ambiguous and have a definite meaning as a matter of law; therefore, the trial court erred in allowing a jury to decide whether Potter was required to make an additional capital contribution to GMP.

■ Under well-established principles of Texas contract construction, whether a contract is ambiguous is a question of law for the court. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). A trial court's determination of a question of law is reviewed *de novo. Id.* at 394. In making this decision, the court must consider the entire agreement, and should harmonize all of the provisions in the contract so that none are rendered meaningless. *Id.* at 393. If the contract is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *Id.* at 393. Parol evidence is not admissible for the purpose of creating an ambiguity. *Nat'l Union Fire Ins. Co.*

*v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). A contract is ambiguous as a matter of law if its meaning is uncertain or susceptible to more than one reasonable interpretation. *Coker,* 650 S.W.2d at 393.

■ With these rules of contractual construction in mind, we turn to the language contained in the GMP regulations at issue in this appeal. The first sentence of section 5.2 of the regulations provides:

> Without creating any right in favor of any third party, each Member **shall** contribute to the Company, in cash, on or before the date specified as hereinafter described, that Member's Sharing ration of all monies that in the judgment of a Majority in Interest of the Members are necessary to enable the Company to cause the assets of the Company to be properly operated and maintained and to discharge its costs, expenses, obligations, and liabilities. (emphasis added)

Considered in isolation, this sentence provides support for GMP's position that additional capital contributions are mandatory. Specifically, this sentence uses the language that each member "shall" contribute; the word "shall" is generally considered to be mandatory rather than permissive. The first sentence, however, cannot be considered in isolation from the rest of the regulations. Potter contends the remaining verbiage in section 5.2 "qualifies" the apparently mandatory nature of additional capital contributions, as set forth in the first sentence. This additional language provides:

> The Managers shall notify each Member of the need for Capital Contributions pursuant to this Section 5.2 when appropriate, which notice must include a statement in reasonable detail of the proposed uses of the Capital Contributions ... **Members shall express their assent or objection to**

**such additional Capital Contributions** in writing or at a meeting of the Members within ten (10) days of receipt of the referenced Notice. (emphasis added)

Potter argues that the option to agree or object makes capital contributions voluntary; otherwise, why have such a provision if contributions must be paid whether agreed to or not? Potter maintains the purpose of including a right to object is to prevent the majority, who in this case authorized the additional capital call, from forcing the objecting member to make a contribution against his will.

Potter points to the first sentence in section 5.7 of the regulations for further support of his argument. The first sentence in that section states:

> No Member shall be liable for the debts, liabilities, or obligations of the Company beyond his respective Initial Capital Contribution, unless separately agreed in writing by said Member.

Potter asserts that this sentence makes understandable the requirement contained in section 5.2 that members are required to express their assent or objection to additional capital contributions in writing. Potter argues that, as the first sentence of section 5.7 makes clear, no member is liable beyond his initial capital contribution unless he agrees to such liability in a separate writing.

GMP responds that a straightforward reading of section 5.2 indicates that a manager, not a majority of the members, "shall notify each member of the need for capital contribution" along with a "statement in reasonable detail of the proposed uses of the capital contributions." The member "shall," in turn, express his assent or objection within ten days of being notified. If, "in the judgment of a majority interest of the members," these subsequent contri-

butions are necessary for the proper operation and maintenance of the company, the subsequent capital contributions "shall" be made by each member. In other words, GMP argues the requirement that the members agree or object in writing is to determine whether a majority of the members agree that the capital call is necessary.

The legal question presented here is whether Potter's interpretation of the contract is correct as a matter of law, or whether the parties' true intent, as expressed in the written regulations, is unclear or susceptible to two or more reasonable interpretations. *Id.* We hold that the regulations are susceptible to two or more reasonable interpretations. The trial court could have interpreted the regulations as providing for mandatory subsequent capital contributions by all members if requested by the manager and agreed to by the majority of the members; or, the trial court could have found, as Potter argues, that additional capital contributions are not mandatory on members who object. Therefore, the regulations are ambiguous and the trial court properly submitted the issue of contract interpretation to the jury. We overrule Potter's first point of error.

**JURY'S DETERMINATION OF PARTIES' INTENT**

In a related issue, Potter also contends the evidence is legally and factually insufficient to support the jury's finding that he agreed to make additional capital contributions to GMP. Potter argues that: 1) the language of the regulations did not make additional contributions mandatory; 2) there was no separate writing showing his agreement to make additional contributions as required by the regulations; and 3) there was no discussion concerning mandatory additional contributions when the regulations were signed by the parties.

When a party who does not bear the burden of proof on an issue challenges the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the jury's finding, disregarding all evidence and inferences to the contrary. *Texas Dept. of Mental Health & Mental Retardation v. Rodriguez*, 63 S.W.3d 475, 480 (Tex.App.-San Antonio 2001, pet. denied). If there is more than a scintilla of evidence to support the finding, the finding will be upheld. *Id.* On a challenge to the factual sufficiency of the evidence, we examine the entire record to determine whether there is some probative evidence to support the jury finding, after which we determine whether the evidence supporting the finding is so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex.App.-Amarillo 1988, writ denied).

Potter offered an expert witness at trial, Edgar Duncan, who testified concerning limited liability company law. He concluded that GMP's regulations did not require mandatory contributions of additional capital. Potter's attorney, Sara Dysart, also testified that there had been no discussion concerning mandatory capital contributions when the GMP regulations were signed by all of the members. She maintained the intent of the regulations was to protect Potter from being required to meet future capital calls. Potter and his wife, Katherine, informed Dysart that they had no additional money to pay capital calls by either the limited partnerships or GMP. Potter testified that it was his subjective intent to never contribute any future capital to any of the three entities that formed this venture. Katherine testified that the issue of additional contributions was never raised at the meetings she attended at

which Miller and Grothues were also present.

On the other hand, the jury heard testimony from Miller stating that additional capital calls were discussed in the presence of Potter and Dysart, and that there was no opposition raised to additional capital contributions. Miller also testified that he advised everyone at the closing, including Potter and his wife, that there would be a definite need for additional capital contributions in the future. Grothues' testimony confirmed Miller's statement that capital calls were discussed, and that Miller explained to everyone the need for future contributions to keep the venture capitalized. Grothues stated he was under the impression that the additional contributions were mandatory. Handwritten notes taken by GMP's attorney, Henry Christopher, were also admitted into evidence. The notes were taken at a meeting on August 24, 1999, where both Potter and Dysart were present, and reference additional capital contributions and capital calls.

Based on the record, the evidence is both legally and factually sufficient to support the jury's finding that Potter agreed to make additional capital contributions. In determining the true intent of the parties, the jury was able to consider all the evidence before the trial court, including the GMP regulations and the testimony from the parties and other witnesses, as well as the other documents relating to the quarry venture. *See Friendswood Dev. Co. v. McDade and Co.*, 926 S.W.2d 280, 283 (Tex.1996) (parole evidence); *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000) (other related instruments). As the trier of fact, the jury was free to decide which party's witnesses were more credible and to conclude that additional contributions were intended to be mandatory under the terms of the regulations. *See Korrody v. Miller*, 126 S.W.3d 224, 228 (Tex.App.-San Antonio 2003, no pet. h.); *Texas Dept. of Mental Health & Mental Retardation*, 63 S.W.3d at 480. We overrule Potter's third issue.

### DAMAGE AWARD

■■■■ In his next issue, Potter contends the evidence is legally and factually insufficient to support the damage award of $189.595.00 in favor of GMP.[1] The trier of fact is given wide discretion to award damages within the range of evidence presented at trial. *See VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 865 (Tex.App.-Forth Worth 2001, pet. denied); *Duggan v. Marshall*, 7 S.W.3d 888, 893 (Tex.App.-Houston [1st Dist.] 1999, no pet.). On appeal, a reviewing court may not set aside a finding of damages merely because the jury's reasoning in arriving at the amount is unclear. *See Duggan*, 7 S.W.3d at 893.

At trial, the jury was presented with evidence that GMP's capital call was issued in the amount of $862,500.00 in large part "to cover shortfalls for preceding partnership capital calls not paid and to repay demand accounts currently due and

---

1. Without citing this Court to any legal authority, Potter contends the trial court erred in entering damages in favor of GMP because the capital call was a "sham." Specifically, Potter maintains that even if GMP's regulations did allow for mandatory calls for additional capital contributions, the actual capital contribution call for $862,500.00 was "grossly improper." Potter suggests GMP's motive in making the call was (1) to transform a voluntary call by Alamo, Ltd. to an arguably mandatory call by GMP and (2) to extract a larger sum of money from him. We construe Potter's sham argument as clarifying why he believes the evidence is legally and factually insufficient to support the damage award in favor of GMP.

payable." The single largest category contained within GMP's call for additional capital was to cover shortfalls from previous Alamo, Ltd. capital calls. Potter objected to GMP's call, argued that it was not mandatory, and refused to pay.[2] Potter also maintained throughout trial that it was the limited partnerships, Alamo, Ltd. and Geronimo, Ltd., that owed money to the bank; further, it was Alamo, Ltd. that was building the plant on the property site and needed additional funds. The general partner, GMP, owned only a 1% interest in the limited partnerships. Therefore, GMP's only obligation was to pay 1% of any capital call being made on behalf of Alamo, Ltd.[3] There was further evidence that Alamo, Ltd. had made four previous capital calls totaling $749,950.00, of which Potter had contributed $110,385.00.

At the conclusion of trial, Question Number 3 submitted to the jury asked, "What sum of money, if any, if paid in cash, would fairly and reasonably compensate GMP, LLC for its damages, if any, that resulted from such [Potter's] failure to comply?" The question also instructed the jury to only consider, "The difference, if any, between the amount owed under the agreement and any amount paid by Carl Potter, Jr." Ultimately, the jury awarded $189,595.00 to GMP for Potter's failure to make the additional contributions. Because $189,595.00 is within the range of evidence presented to the jury, the evidence is sufficient to support the damages award. *See id.*

Potter also argues that the jury did not make a proper calculation of damages because it subtracted the amount Potter paid to Alamo, Ltd. from the amount he owed to GMP. Potter relies on statements made by GMP's attorney, William Ford ("Ford"), at the hearing on Potter's motion for judgment notwithstanding the verdict. The record reflects that Ford stated a juror informed him after trial that, in determining the damage award, they subtracted Potter's previous capital contributions paid to Alamo, Ltd. from the total amount of its previous calls. Accordingly, Potter contends that this figure derived from Alamo, Ltd.'s capital calls cannot form the basis of the damage award to GMP.

There is no evidence in the record demonstrating how the jury actually arrived at the damage award, nor is the court permitted to speculate on the issue. *See Blue Star Operating Co. v. Tetra Applied Techs., Inc.*, 119 S.W.3d 916, 921 (Tex. App.-Dallas 2003, pet denied). The record merely reflects that the jury was presented with several different dollar amounts purportedly owed by Potter and that Potter undeniably failed to pay his portion of the GMP capital call. With regard to the statements made by attorney Ford at the post-trial hearing, argument of counsel is not evidence. *See Texas Dep't of Pub. Safety v. Mendoza*, 952 S.W.2d 560, 564 (Tex.App.-San Antonio 1997, no pet.). Because the $189,595.00 award falls within the range of damages presented to the jury (ranging from zero to $422,625.00), the evidence is sufficient to support the damage award in favor of GMP. *See id.; Duggan*, 7 S.W.3d at 893. We overrule Potter's second issue.

**2.** Potter owned 49% of GMP; therefore, his portion of GMP's capital call was $422,625.00.

**3.** Potter does not believe that he was required to make additional capital contribution to GMP. However, to the extent he was so obligated, Potter argues such obligation should have been limited to his share (49%) of GMP's 1% share of the amount allegedly needed by Alamo, Ltd. or $4,226.25 ($862,500.00 × 1% = $8,625.00; $8,625.00 × 49% = $4,226.25).

## Attorney's Fees

In his last two issues, Potter argues that (1) the trial court erred in awarding attorney's fees to GMP because there is no case law that supports an award of attorney's fees for a member's failure to make a capital contribution to a limited liability company or; alternatively, (2) if GMP is allowed to recover its attorney's fees for a suit on a contract, then Potter should also be able to recover his attorney's fees for his breach of fiduciary duty claim against Miller.

■■■ Potter first argues that GMP's suit against him was not a "suit on a contract" for which attorney's fees are recoverable. He cites two cases. *See Harden v. Colonial Country Club*, 634 S.W.2d 56 (Tex.App.-Fort Worth 1982, writ ref'd n.r.e.); *Veltmann v. Damon*, 696 S.W.2d 241 (Tex.App.-San Antonio 1985), *aff'd in part, rev'd in part on other grounds*, 701 S.W.2d 247 (Tex.1985). In *Harden*, the plaintiff, a member of Colonial Country Club, brought suit against the club seeking to have the club's by-laws, rules and policies declared invalid. *See Harden*, 634 S.W.2d at 58. Although acknowledging that there was a contract between the country club and its members, the Fort Worth Court of Appeals held the suit to declare the club's bylaws invalid was not the type of "suit on a contract" contemplated by the legislature for which attorney's fees are recoverable. *Id.* at 60. Instead, the Court found the legislature intended to allow attorney's fees to be recoverable only by persons who are wronged as a result of a breach of contract and forced to bring suit to collect damages resulting from that breach of contract. *Id.* Similarly, in *Veltmann*, which involved an action to set aside a deed for undue influence, this Court held that, even though the deed was technically a contract, the plaintiff's suit was not

"founded on" the contract and did not seek damages for breach of the contract. *See Veltmann*, 696 S.W.2d at 247.

We find that Potter's reliance on *Harden* and *Veltmann* is misplaced. In the present case, GMP was forced to sue Potter to recover damages because he refused to make the subsequent capital contribution as contemplated in the regulations. Therefore, GMP's contract suit is precisely the type of action contemplated by the legislature for which attorney's fees are recoverable. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8) (Vernon 2004); *Harden*, 634 S.W.2d at 60; *Veltmann*, 696 S.W.2d at 247; *see also Nuclear Medicine Consultants of Texas v. Bunick*, No. 05–99–00570–CV, 1999 WL 998041 at *3 (Tex. App.-Dallas 1999, no pet.) (not designated for publication) (characterizing limited liability company's regulations as a contract). Because GMP was awarded damages on its breach of contract claim, it was entitled to recover its attorney's fees under Section 38.001(8) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8). We overrule Potter's fourth issue.

■■■ In his final issue, Potter contends that if GMP is allowed to recover its attorney's fees, he should have been awarded his attorney's fees because he prevailed on his breach of fiduciary duty claim against Miller. Potter concedes that attorney's fees are generally not recoverable for breach of fiduciary duty claims, but argues that Miller's breach of fiduciary duty was incidental to the GMP agreement. This is the same argument rejected by this Court in *Veltmann*. *See Veltmann*, 696 S.W.2d at 247. Potter's claims against Miller were not founded on a contract; therefore, he is not entitled to recover his attorney's fees. We overrule Potter's fifth issue.

Based on the foregoing reasons, we affirm the judgment of the trial court.