COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-002-CV

 

 

BROCK INDEPENDENT SCHOOL                                             APPELLANT

DISTRICT

                                                   V.

 

TONY BRIONES D/B/A WEST TEXAS                                       APPELLEES

CONCRETE
AND METAL

BUILDINGS,
SAMUEL TREVINO

D/B/A
SAM=S
CONSTRUCTION

                                              ------------

 

            FROM
THE 415TH DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                       I.  Introduction








Appellant Brock Independent
School District (ABISD@) sued Appellees Tony Briones d/b/a West Texas Concrete and Metal
Buildings (ABriones@) and Samuel Trevino d/b/a Sam=s Construction (ATrevino@) (collectively AAppellees@) for damages resulting from Appellees= installation of a roof in connection with a school construction
project.  A jury awarded BISD
$519,771.00.  In five issues, BISD argues
that the trial court erred by submitting two instructions, that the jury=s negligence apportionment finding and ANo@ answer to the
contract-compliance question are against the great weight and preponderance of
the evidence, and that the evidence is factually insufficient to support the
jury=s damages finding.  We will
affirm.

                   II.  Factual and Procedural Background

BISD sought to build a new
elementary and middle school in late 2001. 
It hired D.S.A., Inc. as a construction manager to assist with the
bidding process and oversee the project. 
BISD hired Stuckey Architects, Inc. as the architect.  Stuckey prepared a project manual for BISD
setting forth the general and supplemental conditions and specifications for
the project and instructions for placing bids on the project.  BISD ultimately awarded each phase of the
project to a different subcontractor, who contracted directly with BISD, the
owner, as a trade contractor.








Burton Sandefur, a project
manager for DSA, knew Briones from previous jobs and contacted him about the
BISD project.  Briones, who performs
concrete and metal building construction, subsequently signed a contract with
BISD in March 2002 to furnish equipment and labor to erect Aall pre-engineered metal building components and all structural steel,@ which included building new metal buildings and laying a new roof on
an existing gymnasium.  Briones=s crew installed the roof overlay on the old gymnasium, but Briones
subcontracted much of the rest of the work to Trevino, another contractor who
performs metal building erection.  The
project manual called for a standing seam metal roof, and it required the
manufacturer, RollCOM, to warranty the roof for weathertightness.  BISD did not select RollCOM to furnish the
metal roof until after BISD had entered into its contract with Briones.

Trevino=s crew began constructing their portion of the project sometime
between July and September 2002.  Tom
Weaver was the job superintendent at the time, followed by Drew Scott and Rowdy
Hutchins.  According to Sandefur, the
superintendent was responsible for overall coordination and had no authority to
change the project=s
specifications or deviate from the contract documents.  There was evidence, however, that Weaver was Ain charge@ at the
project site.  Although the roof was
supposed to be installed by laying and securing the panels from one end of the
roof to the other, Weaver erroneously instructed Trevino=s crew to install the roof by setting the panels at both ends of the
roof and working towards the middle.








Errors in the installation of
the roof installed by Trevino manifested sometime in the Spring of 2003 when
DSA sought to have RollCOM issue its warranty. 
RollCOM declined to issue the weathertightness warranty after its
representatives inspected the roof and discovered that the roof did not fully
comply with RollCOM=s
specifications.  RollCOM inspected the
roof a second time and once again found errors in its installation.  BISD retained Exterior Consulting Innovations,
Inc. (AECI@) to
independently evaluate the roof.  ECI
counted 115 leaks and opined that the roof had not been installed in accordance
with the specifications or the manufacturer=s installation instructions. 
Sandefur acknowledged that the plans provided to the trade contractors
in the bidding process did not include the RollCOM installation instructions,
and Frank Trevino, Samuel Trevino=s son, recounted that the Ashop drawings@ for the
roof that Trevino=s crew had
were not as detailed as the RollCOM instruction manual, which he saw for the
first time just two days before testifying at trial.

DSA gave Briones an
opportunity to remedy the defects in the roof, but Briones was ultimately
unsuccessful.  In March 2004, BISD
declared Briones in breach of his contract and terminated his right to complete
the project.  ECI opined that the roof
was beyond repair and that BISD would have to install a new roof to correct the
problems.  Stuckey opined that a new roof
or overlaying the roof with another roof layer would be needed to cure the
problems.








BISD sued Briones and Trevino
for breach of contract, breach of warranty, violations of the Deceptive Trade
Practices Act (ADTPA@), and negligence.  Briones and
Trevino sued DSA, but the trial court granted DSA=s no evidence motions for summary judgment as to both Briones=s and Trevino=s
claims.  In its charge to the jury, the
trial court included an instruction that Athe actions of DSA, Inc. are those of Brock Independent School
District.@  The jury found that BISD, Briones, and
Trevino were all negligent, apportioning 85% of the negligence to BISD, 10% of
the negligence to Briones, and 5% of the negligence to Trevino.  The jury answered ANo@ to the DTPA
question and ANo@ to the question asking whether Briones failed to comply with his
contract with BISD.  The jury, however,
answered AYes@ to the question asking whether Briones failed to comply with a
warranty, and it awarded BISD damages in the amount of $519,771.00.  BISD filed a motion for new trial, which the
trial court denied.  This appeal
followed.

                               III.  Sufficiency Arguments








In its third issue, BISD
argues that the jury=s damages
finding of $519,771.00 is Anot supported by the evidence@ because it was Ainadequate,
contrary to the evidence, and had no rational basis.@[2]  In its fifth issue, BISD
argues that the jury=s ANo@ answer to
the contract-compliance question is against the great weight and preponderance
of the evidence.

A.     Standard of Review








When a party challenges the
factual sufficiency of a finding on an issue on which it had the burden of
proof, it must demonstrate that the adverse finding is against the great weight
and preponderance of the evidence.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  When reviewing an issue asserting that a
finding is Aagainst the
great weight and preponderance@ of the evidence, we must consider and weigh all of the evidence and
set aside the finding only if the evidence is so weak or the finding is so contrary
to the great weight and preponderance of the evidence as to be clearly wrong
and unjust.  Id.; In re King=s Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951).  The trier of fact is
the sole judge of the credibility of witnesses and the weight to be given to
their testimony.  Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).[3]

B.     Damages Finding








The jury generally has broad
discretion to award damages within the range of evidence presented at
trial.  Gulf States Utils. Co. v. Low,
79 S.W.3d 561, 566 (Tex. 2002); Clary Corp. v. Smith, 949 S.W.2d 452,
467 (Tex. App.CFort Worth
1997, pet. denied).  A jury may not,
however, arbitrarily assess an amount neither authorized nor supported by the
evidence presented at trial.  Mills v.
Jackson, 711 S.W.2d 427, 434 (Tex. App.CFort Worth 1986, no writ).  In
other words, a jury may not Apull figures out of a hat.@  Neiman-Marcus Group, Inc.
v. Dworkin, 919 F.2d 368, 373 (5th Cir. 1990).  When the trial evidence supports a range of
damages awards, as opposed to two distinct options, an award within that range
is an appropriate exercise of the jury=s discretion, and the reviewing court is not permitted to speculate on
how the jury actually arrived at its award. 
Potter v. GMP, LLC, 141 S.W.3d 698, 704 (Tex. App.CSan Antonio 2004, pet dism=d); Mayberry v. Tex. Dep=t of Agric., 948 S.W.2d 312, 317 (Tex.
App.CAustin 1997, writ denied).

Here, BISD contends that it
provided the jury with only two damages calculationsC$1,027,205.45 and $898,011.73Cand that these amounts were Abased upon competitive bids that were submitted to complete the
necessary replacement and repair work@ of the roof and building.  But
these were not the only figures before the jury.  A AProject Proposal Register,@ one of BISD=s exhibits
at trial, lists prospective bidders for the roofing project and the amounts of
their respective bids.  Three of the
contractors submitted base bids in the amounts of $493,314, $514,462, and
$610,456.  Moreover, a May 24, 2004 bid
proposal submitted by Lon Smith Roofing contains a bid to overlay the roof in
the amount of $503,914 and a bid in the amount of $15,857 to A[r]emove leak damaged ceiling panels in [the] gym, and furnish labor
and materials to install new panels as needed to match existing panels.@  Although it is not necessary
that we determine how the jury arrived at its damages finding, the combined
total of Lon Smith Roofing=s bids equals the jury=s damages finding of $519,771.00.








Additionally, included within
the $1,027,205.45 figure are amounts for AConstruction Document preparation and construction administration (ECI
proposal)@C$93,680.00Cand ARental of portable buildings@C$304,875.00.  Included within
the $898,011.73 figure are amounts for AAdded cost for weekend and out of school work to limit disturbance and
learning@C$182,565.00Cand the
$93,680 ECI proposal.  The jury could
have concluded that these services were unnecessary, thus lowering each bid
amount by the total of the deemed unnecessary services, bringing the totals
that BISD claims were the only two damages calculations before the jury
significantly more in line with the bids contained in the AProject Proposal Register.@

BISD argues that Briones=s failure to repair the roof was a continuing breach of warranty such
that the appropriate time to measure damages for failure to repair is the time
of trial.  BISD=s argument is unpersuasive because it provided written notice to
Briones in March 2004 that it was declaring Briones Ain breach of contract@ and that it was terminating Briones=s right to complete the contract. 
Damages for Briones=s failure to repair cannot extend to the time of trial because BISD
expressly prohibited Briones from performing any further repairs in March 2004.








Accordingly, BISD provided
the jury with a range of damages awards, and it was within the jury=s discretion to award BISD damages in the amount of $519,771.00Can amount that was not arbitrarily assessed.  See Potter, 141 S.W.3d at 704.  Having considered and weighed all of the
evidence, we hold that the jury=s damages finding in the amount of $519,771.00 is not so weak or so
contrary to the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  See Dow Chem. Co.,
46 S.W.3d at 242.  We overrule BISD=s third issue.

C.     Compliance with Contract

The jury charge included the
following question: ADid Tony
Briones d/b/a West Texas Concrete and Metal Buildings fail to comply with the
contract dated March 12, 2002, with Brock Independent School District?@  The jury answered ANo.@  BISD argues that the jury=s answer is against the great weight and preponderance of the evidence
because Briones agreed (1) to warrant his work per the project=s plans and specifications and (2) to not hire a subcontractor to
perform work on the project without prior written approval.

The evidence shows that
RollCOM declined to issue its weathertightness warranty because the roof did
not meet RollCOM=s
installation specifications.  RollCOM
observed after conducting its inspections that panels had not been hand
crimped, incorrect fasteners had been used, and sealants were insufficient or
missing, among other things.  ECI also
evaluated the roof and determined that it had not been installed in accordance
with RollCOM=s
installation instructions or the specifications.  ECI discovered numerous leaks inside and
opined that a new roof would be needed to remedy the problems.








There was also evidence,
however, that Weaver erroneously instructed Trevino=s crew to install the roof by setting the panels at both ends of the
roof and to work towards the middle. 
Weaver told the contractors to use three fasteners when installing the
panels instead of four because they were short on material.  There was evidence that Weaver was Ain charge@ at the
project site and that he often informed the crews that the project was behind
schedule, urging them to speed up their respective work.  He even had the contractors work in the rain Aseveral times.@  Briones testified that he is used to
following a chain of command when at a project site, that a contractor cannot
just say Ano@ to a superintendent, and that a person might get fired for going over
the superintendent=s head on an
issue.  Sandefur agreed that if a
contractor had a question, then the person to see was the superintendent.  Frank Trevino testified that Weaver answered
questions posed by the contractors and that Weaver said there was no need for
the contractors to talk to the architect because that was his job.

RollCOM requires that its
roofs be installed by certified installers, but neither Briones=s crew nor Trevino=s crew had completed the certification prior to installing the
roof.  When Briones requested time to get
his crew certified, Weaver told him that the project could not wait and that it
needed to be completed.








Sandefur acknowledged that
the plans provided to the trade contractors in the bidding process did not
include the RollCOM installations instructions, and Frank Trevino recounted
that the Ashop
drawings@ for the roof that Trevino=s crew had were not as detailed as the RollCOM instruction manual,
which he saw for the first time just two days before testifying at trial.

Trevino=s crew experienced complications when they started working on the
project and roof: anchor bolts did not line up, purlins did not fit, the
concrete was off square by four to six inches, and red iron was rusted.  Part of the problems ultimately associated
with the roof=s
installation were attributable to the seams not being tightly bundled against
each other.  Briones explained that the
mechanical roof seamer (used to crimp the metal panels together) was not made
available until the entire roof had been installed.[4]  Vice grips, or a Ahand crimper,@ needed to
install the roof were also not on the job.[5]








Regarding BISD=s prior approval of Briones=s intent to subcontract part of the work to Trevino and his crew,
Briones testified that he informed Sandefur that he intended to use Trevino for
part of the job before both his and Trevino=s crew arrived at the project site. 
Sandefur said it was okay.

The jury assessed the
credibility of witnesses and the weight to be given to their testimony, which
we may not disturb.  Having considered
and weighed all of the evidence, we cannot say that the evidence supporting the
jury=s ANo@ answer to the contract compliance question is so weak or so contrary
to the great weight and preponderance of the evidence as to be clearly wrong
and unjust.  See Dow Chem. Co., 46
S.W.3d at 242; see generally Fraser v. Baybrook Bldg. Co., No.
01-02-00290-CV, 2003 WL 21357316, at *2B3 (Tex. App.CHouston [1st
Dist.] Jun. 12, 2003, pet. denied) (mem. op.) (holding evidence factually
sufficient to support finding that contractor complied with agreement).  Accordingly, we overrule BISD=s fifth issue.








                IV.  Instructions and Apportionment Finding

In its first issue, BISD
argues that the trial court erred by instructing the jury that Athe actions of DSA, Inc. are those of [BISD].@  BISD contends that the
instruction was improper because it misstated the law of agency, removed the
question of agency from the jury, was not supported by the pleadings and
evidence, and constituted a comment on the weight of the evidence.  Related to its first issue, BISD argues in
its second issue that, assuming the agency instruction was proper, the jury=s 85% negligence apportionment to BISD finding is against the great
weight and preponderance of the evidence. 
In its fourth issue, BISD argues that the trial court erred by including
a damages mitigation instruction because it was not supported by sufficient
evidence.








A trial court must submit Asuch instructions and definitions as shall be proper to enable the
jury to render a verdict.@  Tex.
R. Civ. P. 277; Union Pac. R.R. Co. v. Williams, 85 S.W.3d 162,
166 (Tex. 2002).  When an instruction is
given, the question on review is whether it is proper.  M.N. Dannenbaum, Inc. v. Brummerhop,
840 S.W.2d 624, 631 (Tex. App.CHouston [14th Dist.] 1992, writ denied).  An instruction is proper if it assists the
jury, accurately states the law, and finds support in the pleadings and
evidence.  See Tex. R. Civ. P. 278; In re
Commitment of Almaguer, 117 S.W.3d 500, 502 (Tex. App.CBeaumont 2003, pet. denied); Williams, 85 S.W.3d at 166.  Rule 277 affords the trial court considerable
discretion in deciding what instructions are necessary and proper.  State Farm Lloyds v. Nicolau, 951
S.W.2d 444, 451B52 (Tex.
1997).  Indeed, a trial court is afforded
even more discretion when submitting instructions than when submitting
questions.  Wal-Mart Stores, Inc. v.
Middleton, 982 S.W.2d 468, 470 (Tex. App.CSan Antonio 1998, pet. denied). 
Accordingly, we review the trial court=s submission of instructions for an abuse of discretion.  In re V.L.K., 24 S.W.3d 338, 341 (Tex.
2000); James v. Kloos, 75 S.W.3d 153, 162 (Tex. App.CFort Worth 2002, no pet.).  A
trial court abuses its discretion by acting arbitrarily, unreasonably, or
without consideration of guiding principles. 
Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).  We will not reverse a judgment based on
charge error in the absence of harm, which results if the error Aprobably caused the rendition of an improper judgment@ or Aprobably
prevented the petitioner from properly presenting the case to the appellate
courts.@  Tex. R. App. P. 44.1; Tex. Disposal Sys. Landfill, Inc. v.
Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 580 (Tex. App.CAustin 2007, pet. denied).

A.     A[T]he actions of DSA, Inc.
are those of [BISD]@ and

Apportionment  Finding

 








Appellees initially argue
that BISD failed to preserve for review some of its arguments complaining of
the trial court=s
instruction that Athe actions
of DSA, Inc. are those of [BISD].@  Because BISD only objected
that the instruction was a comment on the weight of the evidence and that there
was no evidence that BISD Aratified or approved DSA=s actions,@ Appellees
contend that BISD waived its arguments that the instruction misstated the law
of agency, prevented the jury from deciding disputed fact questions, and did
not conform to the pleadings and evidence. 
We disagree.

The test for determining
whether a party has preserved error in the jury charge is whether the party
timely and plainly made the trial court aware of the complaint and obtained a
ruling.  State Dep=t of Highways v. Payne, 838 S.W.2d
235, 241 (Tex. 1992); see also Tex.
R. Civ. P. 274 (requiring a party objecting to a charge to point out
distinctly the objectionable matter and the grounds of the objection); Tex. R. App. P. 33.1(a).  As explained below, each of BISD=s arguments essentially complain that Weaver, DSA, or both were acting
outside the scope of his or its actual or apparent authority when engaging in
the negligent activity.  Though not
expressed as eloquently as its exhaustive appellate arguments, BISD=s objection that it did not ratify or approve of DSA=s actions comports with its arguments on appeal and timely and plainly
made the trial court aware of its complaint. 
We will therefore consider BISD=s argument in its entirety.













BISD couches its four arguments
challenging the trial court=s instruction in different terms, but the ultimate contention
underlying each argument is the sameCthat it was error for the trial court to include the instruction
because Weaver=s or DSA=s negligent activity (the erroneous instructions explaining how to
install the roof) did not occur within the scope of Weaver=s or DSA=s actual or
apparent authority.[6]  BISD stresses that the contract documents
clearly define DSA=s authority
and that there was no evidence that it extended DSA=s or Weaver=s authority
so that either of them could direct Appellees= means, methods, techniques, and sequences for the construction
work.  Thus, according to BISD, because
Weaver or DSA did not have the authority to instruct or direct the Appellees= manner or means, the trial court=s instruction erroneously imputed Weaver=s or DSA=s
outside-the-scope-of-authority negligent activity to BISD.








The record is clear that the
jury also found Briones liable for breach of warranty and that it awarded BISD
damages in the amount of $519,771.00. 
Although the $519,771.00 award is a lump sum total not broken down by
the various causes of action, the entire amount of the award can be attributed
to the jury=s
affirmative breach of warranty finding because the trial court rendered
judgment for BISD against Briones for the full amount of the $519,771.00 award;
the trial court did not reduce the award by any amount based on the jury=s 85% negligence-apportionment finding.[7]  The complained of instruction also did not
factor into the jury=s damages
finding because the damages question specifically instructed the jury to Anot reduce the amount, if any, in your answer because of the negligence,
if any, that you have attributed to Brock Independent School District.@  No party challenges the breach
of warranty finding, and we have affirmed the damages award above.  Thus, the inclusion of the instruction that Athe actions of DSA, Inc. are those of [BISD]@ had no effect on the trial court=s judgment, which rendered judgment for BISD on its breach of warranty
claim for the full amount of the jury=s damage award.  For the same
reasons, the jury=s 85%
negligence-apportionment finding likewise had no effect on the trial court=s judgment.  Accordingly,
assuming that the trial court abused its discretion by including the
instruction, the error was harmless.  See
Tex. R. App. P. 44.1; Tex.
Disposal Sys. Landfill, Inc., 219 S.W.3d at 580.  We overrule BISD=s first and second issues.

B.     Mitigation Instruction








BISD further argues that
there was insufficient evidence to include a damages mitigation instruction in
the jury charge.  In arguing that the
alleged error was harmful, BISD contends, AIf the mitigation instruction had not been included in the charge, the
jury would have followed the only calculations that it was given[,] and the
damages award would have been based upon the evidence.@  Thus, according to BISD, the
mitigation instruction must have caused the jury to award less damages because
the finding is less than the only two damages calculations that were before the
jury.  Assuming without deciding that the
trial court abused its discretion by including the mitigation instruction in
the jury charge, we cannot conclude that the error was harmful because, as explained
in our evidentiary sufficiency analysis of the jury=s damages finding, the jury clearly arrived at its damages finding by
adopting the amounts reflected in a contractor=s bid to perform a roof overlay and to remove and replace the damaged
ceiling panels in the gymnasium, which, in addition to BISD=s proposed damages calculations, was one of a number of calculations
in evidence.  There is nothing to
indicate that the mitigation instruction had any effect on the jury=s damages finding or probably caused the rendition of an improper
judgment.  See Tex. R. App. P. 44.1.  We overrule BISD=s fourth issue.

                                        IV.  Conclusion

Having overruled each of BISD=s arguments, we affirm the trial court=s judgment.

 

 

PER CURIAM

 

 

PANEL
B:  HOLMAN, DAUPHINOT, and WALKER, JJ.

 

DELIVERED:  March 13, 2008











[1]See Tex. R. App. P. 47.4.





[2]Although
BISD does not specifically state that the jury=s
damages finding is Aagainst
the great weight and preponderance of the evidence@
(like in its second and fifth issues), the relief that BISD prays for (that the
trial court=s
judgment be reversed and that the case be remanded for a new trial) is
consistent with the relief accompanying a determination that the evidence is
factually insufficient to support a finding. 
See Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401B02
(Tex. 1981) (op. refusing writ n.r.e.) (stating that when a court of appeals
sustains a point or issue because the evidence is factually insufficient, it
must reverse the judgment of the trial court and remand for a new
trial).  We therefore construe BISD=s
third issue as challenging the factual sufficiency of the evidence to support
the finding.





[3]BISD
had the burden of proof on its breach of warranty claim.  Considering our determination below that the
entire damages award is attributable to BISD=s warranty claim, we conduct
our factual sufficiency review of BISD=s damages argument pursuant
to the standard of review articulated in Dow Chemical Co., not pursuant
to the standard of review used when a party without the burden of proof
challenges the factual sufficiency of the evidence to support a fact finding. 





[4]Sandefur
partially explained the standing seam roof and mechanical seamer as follows:

 

You have B a
standing seam roof has two B it=s
like a U.  And when you lay those panels
down, there=s a
clip that stands up that=s
screwed to the purlin below it.  The two
panels are supposed to bump one another. 
This seam sealer is a mechanical B kind of like a can opener
that sits over the top of it, if you will. 
And when you turn it on, it=s electric, and it rolls B it
rolls the seam to where it rolls it over into itself which seals the roof.





[5]Sandefur
explained a hand crimper as follows:

 

In
installing a standing seam roof, with the parts that come from the metal
building component people, they send what they call a hand crimper, which looks
like a big pair of vice grips, basically, with a B duck
bill vice grips, if you will.  And you B the
instructions are as you=re
installing those sheets, you line the sheets, set them over the B over
the clips that are screwed to the purlins, and then you hand crimp the top
metal and the bottom of [the] sheets that are approximately 30 foot or
less. . . .  Then, basically,
you don=t
need the seam sealer until you=re nearly through with the
roof.

 





[6]Under
BISD=s
argument that the instruction misstates the law of agency, it contends that
there was no evidence that Weaver was within his actual or apparent authority
as either a BISD or DSA agent Afor any alleged roof
installation instructions@ and
that there was no evidence conclusively establishing that Aevery
single act committed by DSA was within the scope of its
agency relationship with@
BISD. [Emphasis added.].  Under BISD=s
argument that the instruction improperly removed the question of agency from
the jury, it contends that there was conflicting evidence whether DSA or Weaver
acted within their apparent authority when Aallegedly directing
[Appellees] on roof installation.@  Under BISD=s actual and apparent
authority arguments, it contends that the evidence did not conclusively
establish that DSA or Weaver had actual or apparent authority as BISD=s
agents Afor
roof installation instructions.@  Under BISD=s argument that the
instruction was not supported by the pleadings and evidence, it contends that
there was no evidence to support the trial court=s
instruction that all of DSA=s acts were the acts of
BISD.  And under BISD=s
argument that the instruction was an improper comment on the weight of the
evidence, it contends that the instruction presumed that DSA or Weaver were
acting as BISD=s
agent when the alleged negligent acts were committed and that the
instruction removed from the jury=s consideration any evidence
that DSA acted outside of its authority Awhen
it allegedly exercised specific control over the performance of [Appellees=]
work.@





[7]See Tex. Civ. Prac. & Rem. Code Ann. '' 33.001,
33.012(a) (Vernon 1997 & Supp. 2007) (setting forth proportionate
responsibility scheme).