

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-176-CV

LAINIE WHITMIRE                                    APPELLANT

V.

NATIONAL CUTTING HORSE                              APPELLEE
ASSOCIATION

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  INTRODUCTION

In three issues, Appellant Lainie Whitmire appeals the summary judgment entered against her and in favor of Appellee National Cutting Horse Association (the NCHA).  We will affirm in part and reverse and remand in part.

------

[1] See Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

## A. The NCHA

The NCHA is a non-profit association whose purpose is "to encourage, promote, advertise and develop the cutting horse as a unique and excellent equine athlete." The NCHA's board of directors has the power to make and amend the NCHA's rules and regulations, including rules for the admission, supervision, and expulsion of members. Members of the NCHA agree, as part of their applications, to follow and to be bound by the NCHA rules.

Under the rules, NCHA members may compete in cutting horse competitions as professionals, non-professionals, or amateurs, depending on certain qualifications.[2] The rules provide that any person who has trained horses astride for direct or indirect remuneration shall be considered a professional.

Pursuant to NCHA Rule 37, a member may file a complaint regarding an alleged violation of NCHA rules by providing the NCHA executive director with a written complaint and a $50.00 filing fee. Upon receipt, the NCHA president

---

[2] For example, to compete as a non-professional, the member must not have received direct or indirect remuneration for showing, training, or assisting in training at a cutting horse operation. To compete as an amateur, a member must not have ridden horses or trained horses or horse riders for direct or indirect remuneration or assisted in training horses or horse riders for remuneration in the last ten years.

2

will appoint a grievance committee to review and to investigate the complaint and, if necessary, to take disciplinary action against the member. The grievance committee's decision shall be final and binding unless the member appeals in writing pursuant to Rule 38.

Rule 38 provides that a member may appeal the grievance committee's decision and that the executive committee or a hearing committee will hold a de novo hearing regarding the alleged rule violation. The executive or hearing committee's decision on appeal is final and binding. Rule 38 provides, "Any member may be disciplined . . . whenever it shall have been established by a preponderance of the evidence that such member or non-member has violated any rule of the Association." A member must be given fifteen days' notice of a time and place for an appeal hearing and an opportunity to be heard at that hearing.

## B. Whitmire's Membership in the NCHA

Whitmire was a member of the NCHA and competed in the amateur class. In 2004, the NCHA sent Whitmire a letter informing her that it had concerns regarding her amateur status and requested detailed information regarding her past employment. Later that year, on November 1, 2004, the NCHA sent Whitmire a second letter notifying her that the association had received information that she previously had trained horses for remuneration in violation

3

NCHA rules for amateur and non-professional statuses. Specifically, the letter stated that "[t]he synopsis of the complaint is that you [Whitmire] have trained barrel horses for clients and received remuneration for your training." The letter informed Whitmire that the NCHA president had appointed a grievance committee to review and to investigate the complaint and that a hearing would be held in front of the grievance committee on November 15, 2004 in order to provide Whitmire an opportunity to be heard.

Whitmire and her attorney, Clark Brewster, appeared at the hearing. At the conclusion of the hearing, the committee decided to revoke Whitmire's amateur status. The committee also decided to suspend her non-professional status unless, within fifteen days, Whitmire produced evidence to show her eligibility for non-professional status and took a polygraph examination concerning her past horse training experience.

Whitmire appealed the grievance committee's ruling pursuant to NCHA Rule 38, and an appeal hearing was scheduled for January 19, 2005. On the day of the hearing, Brewster and the NCHA's attorney, E. Eldridge Goins, Jr., reached an oral settlement agreement. Both parties agree that they reached a settlement agreement and that, as part of the agreement, Whitmire would withdraw all appeals and her membership would be suspended for six months. The parties dispute, however, whether reinstatement of Whitmire's non-

4

professional status at the conclusion of the six-month suspension was a term of the settlement agreement.

Goins subsequently sent Brewster a letter, purportedly confirming the terms of the settlement agreement. The letter stated that the parties agreed that "all pending investigations and appeals are hereby ceased," that Whitmire's NCHA membership would be suspended for six months, and that Whitmire's amateur and non-professional statuses would be revoked. The letter did not mention reinstatement of Whitmire's non-professional status. Whitmire contends, however, that Brewster contacted Goins after receiving the letter and that Goins assured him that, contrary to the terms in the letter, Whitmire would be eligible for reinstatement of her non-professional status at the end of her six-month membership suspension. The letter did not provide a signature line for Brewster or Whitmire, and they did not otherwise respond in writing.

Sometime after the six-month membership suspension period had ended, Whitmire applied for reinstatement of her non-professional status. The NCHA denied her application due to ineligibility. In a letter dated March 2, 2006, Whitmire's new attorney, James Walker, requested reconsideration of Whitmire's application for non-professional status and an appeal to the NCHA executive committee if her application was denied for a second time. The NCHA again denied Whitmire's application and recommended that her NCHA

5

privileges be revoked for one year because it claimed that she had made false statements in her application. Whitmire appealed this decision, and in August 2006 the NCHA held a hearing on her appeal; Whitmire appeared with her attorney, Walker. At the hearing, Walker acknowledged that the parties had previously reached a settlement agreement, although he did not detail the terms of that agreement, i.e., whether or not they had agreed that Whitmire's non-professional status would ultimately be reinstated. After the hearing, the executive committee denied Whitmire's application for non-professional status and suspended her NCHA membership for one year. The NCHA notified Whitmire that she could appeal the executive committee's decision, but she declined to do so.

In October 2006, Whitmire filed suit against the NCHA, asserting claims for declaratory judgment,[3] for breach of contract regarding both the oral settlement agreement (which Whitmire claimed included the provision that her

---

[3] Specifically, Whitmire requested declaratory judgment that (1) she qualifies as a non-professional under the NCHA rules because she has never trained horses astride for direct or indirect remuneration; (2) the NCHA cannot recover attorney's fees pursuant to NCHA Rule 41, which provides that the NCHA may recover attorney's fees when a *member* institutes litigation against the NCHA, "in light of the NCHA's concurrent insistence upon the fact that she is not an NCHA member"; and (3) certain provisions of the NCHA's constitution and bylaws are vague, ambiguous, overbroad, and do not support the NCHA's actions against Whitmire.

6

non-professional status would be reinstated after her six-month suspension) and the NCHA membership contract, and for fraud and negligent misrepresentation. Whitmire asserted a libel claim alleging that the NCHA published that she had violated NCHA rules in an official NCHA publication. She also asserted claims for violations of due process and breach of fiduciary duty based on the NCHA's disciplinary actions against her. Finally, she asserted claims for false imprisonment and intentional infliction of emotional distress based on facts not relevant to this appeal.

Sometime after Whitmire filed this lawsuit, the NCHA notified her that a hearing had been scheduled to determine whether to indefinitely terminate her membership and requested her attendance at the hearing. Whitmire did not appear at the hearing, and the NCHA executive committee revoked her membership. Whitmire did not appeal this ruling.

In response to Whitmire's lawsuit, the NCHA filed a motion for summary judgment based on the doctrine of judicial non-intervention. Specifically, the NCHA claimed that Whitmire's claims for declaratory judgment, breach of contract, fraud, negligent misrepresentation, violation of due process, violation of fiduciary duty, libel, and intentional infliction of emotional distress arose from disciplinary proceedings for Whitmire's violation of NCHA rules and that these claims are barred by the judicial non-intervention doctrine. The NCHA also filed

7

a supplemental traditional and no-evidence motion for summary judgment regarding Whitmire's claims for breach of the oral settlement agreement and false imprisonment.  The trial court granted summary judgment in favor of the NCHA on all of Whitmire's claims except false imprisonment and intentional infliction of emotional distress; the trial court ordered those claims severed, and Whitmire perfected this appeal.

### III.  STANDARDS OF REVIEW

#### A.  NO-EVIDENCE SUMMARY JUDGMENT

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the elements for which there is no evidence.  *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable

8

inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

## B. Traditional Summary Judgment

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

9

## IV. JUDICIAL NON-INTERVENTION DOCTRINE

In her first issue, Whitmire argues that the trial court erred by granting summary judgment for the NCHA based on the judicial non-intervention doctrine. She claims that the doctrine does not apply to her claims for declaratory judgment, breach of contract, fraud, negligent misrepresentation, violation of due process, violation of fiduciary duty, and libel. Specifically, Whitmire contends that a genuine issue of material fact exists as to whether the NCHA complied with its own rules.

Traditionally, courts are not disposed to interfere with the internal management of a voluntary association. *Harden v. Colonial Country Club*, 634 S.W.2d 56, 59 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). By becoming a member, a person subjects himself, within legal limits, to the organization's power to make and administer its rules. *Id.* Thus, courts will not interfere with the internal management of voluntary associations so long as the governing bodies of those associations do not substitute legislation for interpretation and do not overstep the bounds of reason or violate public policy or the laws of the state. *See Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 176 (Tex. App.—Dallas 2000, pet. denied); *Burge v. Am. Quarter Horse Ass'n*, 782 S.W.2d 353, 355 (Tex. App.—Amarillo 1990, no writ); *Butler v. Hide-A-Way Lake Club, Inc.*, 730 S.W.2d 405, 410 (Tex. App.—Eastland 1987, writ ref'd

n.r.e.); *Harden*, 634 S.W.2d at 59; *Adams v. Am. Quarter Horse Ass'n*, 583 S.W.2d 828, 834 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.); *Hoey v. San Antonio Real Estate Bd.*, 297 S.W.2d 214, 217 (Tex. Civ. App.—San Antonio 1956, no writ); *Bhd. of R.R. Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex. Civ. App.—Galveston 1937, writ dism'd). Judicial review is only proper when the actions of the organization are illegal, against some public policy, arbitrary, or capricious. *Harden*, 634 S.W.2d at 60; *Butler*, 730 S.W.2d at 410.

Accordingly, Texas common law severely limits review of a private association's actions. *Dallas County Med. Soc'y v. Ubinas Brache*, 68 S.W.3d 31, 41 (Tex. App.—Dallas 2001, pet. denied), *cert. denied*, 535 U.S. 970 (2002). Courts have gone so far as to state that they will not review a private association's failure to conduct its business according to its own procedures except for the purpose of protecting some civil or property right. *Id.* at 41–42; *Price*, 108 S.W.2d at 241.

In this case, the NCHA attached to its summary judgment motion the affidavit of the NCHA executive director, Jeff Hooper. In his affidavit, Hooper stated that "the rules and regulations of the NCHA . . . were consistently applied in dealing with any and all complaints against Lainie Whitmire." Hooper stated that the association received a complaint against Whitmire "as prescribed

11

by NCHA rules," that it notified Whitmire of the complaint and provided her an opportunity to respond to the charges against her "as prescribed by NCHA rules," that a grievance committee was empaneled "in accordance with NCHA Rule 37," that Whitmire received notice of the hearing before the grievance committee and attended it with her attorney, and that Whitmire requested an appeal of the grievance committee's decision pursuant to Rule 38.

Whitmire contends that the summary judgment evidence contradicts Hooper's affidavit and instead demonstrates that the NCHA violated its own rules in investigating and in punishing Whitmire. Whitmire specifically argues that the summary judgment evidence shows that the NCHA (1) did not receive a formal complaint in accordance with NCHA Rule 37, (2) did not comply with Rule 38's requirement that a preponderance of the evidence establish a member's rule violation before that member may be punished and instead placed the burden of proof on Whitmire, and (3) found that Whitmire violated NCHA rules for activities not prohibited under the association's rules.

But the NCHA has the right to interpret its own agreements, such as its bylaws and rules. *See Burge*, 782 S.W.2d at 355. By voluntarily becoming a member of the NCHA, Whitmire agreed to be bound by its rules and the NCHA's power to make and administer its rules. *See Dickey*, 12 S.W.3d at 177; *Lawrence v. Ridgewood Country Club*, 635 S.W.2d 665, 667 (Tex.

12

App.—Waco 1992, writ ref'd n.r.e.). Nothing in the record suggests that the NCHA's actions toward Whitmire were illegal, against public policy, arbitrary, or capricious. *See Harden*, 634 S.W.2d at 60; *Butler*, 730 S.W.2d at 410. Whitmire received notice of the complaint against her and fifteen days' notice of a hearing on that complaint and was afforded a right to be heard and to present evidence at that hearing. She appeared at the hearing and called herself and one other witness to testify on her behalf. She also exercised her right to appeal the outcome of that hearing and presented evidence at the appeal hearing. After being subsequently denied reinstatement of her non-professional status, she requested and received review of her denial by the non-professional committee and review of that committee's determination before the executive committee. She received over a month's notice of a hearing before the executive committee, was informed of her right to appear and to present evidence at that hearing, and did in fact appear at that hearing with her attorney.

Whitmire's appellate complaints about the procedures utilized by the NCHA are exactly the type of complaints in which Texas courts have declined to intervene. *See Tex. Thoroughbred Breeders Ass'n v. Donnan*, 202 S.W.3d 213, 225 (Tex. App.—Tyler 2006, pet. denied); *see also Ubinas Brache*, 68 S.W.3d at 42–43 (noting that "the requirements for judicial review are more

13

than a mere breach of [the association's] own policies"). Whitmire's complaints address the technical aspect of the NHCA's application of its rules to her but do not allege a wholesale deprivation of due process or the opportunity to be heard in violation of some civil or property right. *Compare Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 280 (Tex. App.—El Paso 2005, no pet.) (holding judicial non-intervention doctrine would apply so long as actions of board of directors were not illegal, against public policy, arbitrary, capricious, or fraudulent), *and Burge*, 782 S.W.2d at 356 (declining to interfere in association's private affairs when appellant received notice and hearing), *with Hatley v. Am. Quarter Horse Ass'n*, 552 F.2d 646, 656 (5th Cir. 1977) (holding that executive committee's decision to refuse registration without a hearing violated due process).

For these reasons, we will decline to interfere in the right of the NCHA to govern its own affairs. Consequently, we hold that the trial court did not err by granting summary judgment for the NCHA on Whitmire's claims for declaratory judgment, breach of contract for revoking her non-professional and membership statuses in violation of NCHA rules,[4] fraud and negligent misrepresentation to the extent that they involve the general allegation that the

---

[4] We will address separately below Whitmire's breach of contract claim regarding the oral settlement agreement.

NCHA made certain representations to her in the course of its business,[5] libel, violation of due process, and breach of fiduciary duty. We overrule Whitmire's first issue.

## V. BREACH OF ORAL CONTRACT

In her second issue, Whitmire argues that the trial court erred by granting summary judgment for the NCHA on her breach of contract claim regarding the oral settlement agreement. Whitmire claims that the NCHA breached the oral settlement agreement by refusing to reinstate her non-professional status after her six-month suspension—which she claims was a term of the oral settlement agreement.

The NCHA moved for both a no-evidence and a traditional summary judgment on Whitmire's breach of contract, i.e., the oral settlement agreement, claim. The trial court's order granting summary judgment in favor of the NCHA does not specify the basis for its ruling. Therefore, because the NCHA moved for summary judgment on both traditional and no-evidence grounds and because the trial court did not specify the grounds on which it was granted, we will uphold the summary judgment if any one of the grounds advanced in either of

---

[5] We will address separately below Whitmire's fraud and negligent representation claims for statements Goins allegedly made to Brewster regarding reinstatement of Whitmire's non-professional status.

15

the motions is meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

### A.  Analysis of No-Evidence Summary Judgment Motion

In its no-evidence motion, the NCHA alleged that no evidence exists that an authorized agent of the NCHA, while acting within the course and scope of his authority, agreed to a reinstatement of Whitmire's non-professional status as a term of the oral settlement agreement or that the NCHA ratified or approved any oral settlement agreement including that term.

Generally, a principal will be liable for the acts of its agent only if the acts are within the agent's authority or if the principal ratifies the acts. *See Elliot Valve Repair Co. v. B.J. Valve & Fitting Co.*, 675 S.W.2d 555, 560–61 (Tex. App.—Houston [1st Dist.]), *rev'd on other grounds*, 679 S.W.2d 1 (Tex. 1984). If an agent acts within the scope of his authority, both the agent and the principal may be liable. *Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 69

16

(Tex. App.—San Antonio 1988, writ denied). The burden of proving that an agency relationship exists is on the party asserting the existence of the relationship. *See Tex. Cityview Care Center LP v. Fryer*, 227 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007, pet. dism'd); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex. App.—Dallas 2008, no pet.).

An attorney retained for litigation is presumed to possess actual authority to enter into a settlement on behalf of a client. *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 628 (Tex. App.—Fort Worth 2003, pet. denied). This presumption may be rebutted by affirmative proof that the client did not authorize his attorney to enter into the settlement. *Walden v. Sanger*, 250 S.W.2d 312, 316 (Tex. Civ. App.—Austin 1952, no writ); *Johnson v. Rancho Guadalupe, Inc.*, 789 S.W.2d 596, 598 (Tex. App.—Texarkana 1990, writ denied); *Fail v. Lee*, 535 S.W.2d 203, 207–08 (Tex. Civ. App.—Fort Worth 1976, no writ) (affirming summary judgment enforcing settlement agreement absent proof that defendant did not authorize his attorney to settle).

In this case, the summary judgment evidence establishes, and neither party contests, that Goins represented the NCHA in its dispute with Whitmire. Thus, a presumption exists that Goins, as the attorney for the NCHA, had actual authority to enter into a settlement agreement with Whitmire on behalf of the NCHA. *See City of Roanoke*, 111 S.W.3d at 628. The summary

17

judgment evidence also establishes—and the NCHA does not dispute—that the NCHA, at a minimum, had authorized Goins to settle the dispute pursuant to the terms of the letter from Goins to Brewster. Thus, in light of the presumption that Goins was acting with actual authority as the attorney for the NCHA, the NCHA bore the burden to come forward with summary judgment evidence that Goins was not authorized to include in the oral settlement agreement the provision that Whitmire's non-professional status would be reinstated after her six-month membership suspension. *See City of Roanoke*, 111 S.W.3d at 630 (recognizing that "Westlake rebutted the presumption by clear and uncontradicted summary judgment evidence by proving that its attorney of record was never authorized by valid action of the governing body of Westlake to settle, nor was he clothed with apparent authority").

Because the NCHA bore the burden of proof to rebut the presumption that Goins was authorized by the NCHA to include in the oral settlement agreement the provision that Whitmire's non-professional status would be reinstated after her six-month suspension, this issue cannot form the basis of a no-evidence summary judgment motion. *See* Tex. R. Civ. P. 166a(i) (providing that the party without the burden of proof may, without presenting evidence, move for summary judgment). Accordingly, we hold that to the extent the trial court

18

based its summary judgment for the NCHA on the NCHA's no-evidence motion, the trial court erred.

## B. Analysis of Traditional Summary Judgment Motion

In its traditional motion for summary judgment, the NCHA asserted that the summary judgment evidence conclusively establishes that Goins lacked the actual authority to include in the oral settlement agreement the provision that Whitmire's non-professional status would be reinstated at the conclusion of her six-month membership suspension. The summary judgment evidence that the NCHA contends conclusively establishes this fact is the deposition testimony and the affidavit of former NCHA president Don Bussey. Bussey testified at his deposition that the NCHA's executive board authorized Goins to settle the dispute with Whitmire according to the terms of the letter that Goins sent to Brewster. Bussey testified that Goins showed a draft of the letter to the executive board and asked if the board would agree to those terms. On cross-examination, however, Bussey testified that "what [he] saw was not addressed to Mr. Brewster. [He] only saw the outline of the settlement." The NCHA could not produce the outline to which Bussey had referred, and Bussey later contradicted several portions of his deposition testimony in his summary judgment affidavit. He stated in his affidavit,

19

It is my understanding that based upon certain testimony taken at [my deposition] that Plaintiff's counsel is under the mistaken impression that I testified as to the existence of a document containing the same information as a document identified as Exhibit 105 [the letter from Goins to Brewster] but in a different form. I did not testify that there was a document but that I was familiar with the terms that was [sic] in document 105. Whether this was verbal or in another document, I cannot testify to. The only document I have seen containing any terms, proposed or otherwise as to a settlement . . . was the document identified as Exhibit 105. I have seen no other form of this document nor do I know the existence of one.

It is a well-established rule that a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted. *See Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988). Thus, if conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented. *Id.*; *Hale v. Pena*, 991 S.W.2d 942, 946–47 (Tex. App.—Fort Worth 1999, no pet.).

In this instance, Bussey's affidavit contradicts his deposition testimony and creates a fact issue regarding whether the executive board approved the settlement terms contained in the letter or in an outline that the NCHA was unable to produce. *See Randall*, 752 S.W.2d at 5; *Hale*, 991 S.W.2d at 946–47. Bussey did not testify that the NCHA did not approve a term in the oral settlement agreement concerning the reinstatement of Whitmire's non-

professional status at the conclusion of her six-month suspension, and the NCHA failed to produce any other summary judgment evidence to negate or rebut the presumption that Goins was authorized to include in the oral settlement agreement a provision that Whitmire's non-professional status would be reinstated at the conclusion of her six-month suspension. *See Mason*, 143 S.W.3d at 798; *City of Roanoke*, 111 S.W.3d at 628.

The NCHA further asserted as a basis for its traditional motion for summary judgment that the letter from Goins to Brewster was a binding settlement agreement and did not include the term concerning reinstatement of Whitmire's non-professional status. But neither Whitmire nor her attorney signed the letter, only Goins signed it. *See, e.g.*, *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, no pet.) (noting that in absence of signature, other evidence must be relied upon to prove party's unconditional assent to terms of written contract). In fact, the letter did not even contain a signature line for Whitmire or her attorney.

In support of its contention that the summary judgment evidence conclusively establishes that Goins's letter constituted a binding settlement agreement, the NCHA also relies on the transcript from one of the hearings on Whitmire's non-professional status. The NCHA argues that Whitmire's attorney, Walker, "in [Whitmire's] presence acknowledged that the January 19,

2005 Settlement Agreement was a binding agreement and made no mention at the time of any alleged oral agreement." But the transcript of that hearing reveals that Walker agreed only that the parties had reached a binding agreement; he did not detail the terms of that agreement and could have been referring to the oral settlement agreement.[6]

Finally, as summary judgment evidence that the letter constituted a binding settlement agreement, the NCHA points to evidence that at the conclusion of Whitmire's six-month suspension she reapplied for her non-professional status, rather than demanding automatic reinstatement. The NCHA asserted that this evidence shows that Whitmire had "acted in accordance with the terms of the [letter] for well over a year." But Whitmire

---

[6] The following exchange took place between Walker and Goins at this hearing:

> Mr. Walker: And it's this exception that has also been used as a bar to her coming back as a Non-Pro, even having accepted the six-month suspension based upon an agreement that was reached between Mr. Brewster as her counsel and Mr. Goins as y'all's counsel. That's just an agreement reached between counsel, basically to try to smooth things over and end the fight.

> Mr. Goins: Wait a minute. Are you saying it wasn't binding, that she didn't agree to it and the association didn't agree to it?

> . . . .

> Mr. Walker: I'm not denying that it was binding, sir.

22

explained in her deposition that after her six-month suspension had ended, she waited to receive confirmation that her non-professional status had been automatically reinstated but that she ultimately reapplied after she did not hear anything about her reinstatement. When asked why she reapplied instead of asking the NCHA to abide by their oral settlement agreement, Whitmire testified that she "thought that [she] could work through the system and, without it involving attorneys and a bunch of expenses, get [her] non-pro card back."

To controvert these contentions by the NCHA, Whitmire produced summary judgment evidence consisting of deposition testimony from herself and from Brewster that Goins, as the attorney for the NCHA, orally agreed that if she would stop all appeals and agree to a six-month membership suspension and revocation of her amateur status, the NCHA would reinstate her non-professional status at the expiration of that six-month suspension.

In sum, taking as true all evidence favorable to Whitmire, indulging every reasonable inference in her favor, and resolving any doubts in her favor, we hold that the NCHA has not conclusively proven that Goins lacked the authority to offer reinstatement of Whitmire's non-professional status as part of the oral settlement agreement or that the terms of the oral settlement agreement were as stated in Goins's letter and did not include the provision that at the conclusion of Whitmire's six-month suspension her non-professional status

23

would be reinstated.[7] *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). We hold that the trial court erred by granting summary judgment in favor of the NCHA on Whitmire's breach of contract claim regarding the oral settlement agreement. We sustain Whitmire's second issue.

## VI. FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS

In her third issue, Whitmire argues that the trial court erred by granting summary judgment for the NCHA on her fraud and negligent misrepresentation claims. Whitmire does not challenge the merits of the trial court's summary judgment on these claims but instead asserts a purely procedural point on appeal. Whitmire argues that she asserted two separate factual grounds for her fraud and negligent misrepresentation claims and contends that the NCHA sought summary judgment only with respect to one factual ground for each claim.

Summary judgment cannot be granted except on the grounds expressly presented in the motion. *Johnson*, 73 S.W.3d at 204; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). In determining whether grounds

---

[7] It is hard to imagine that Whitmire, who was appealing the revocation of her amateur status and suspension of her non-professional status, would have "settled" her dispute with the NCHA by agreeing to a revocation of her amateur and non-professional statuses *and* a six-month suspension.

are expressly presented, reliance may not be placed on briefs or summary judgment evidence. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). The purpose of this requirement is to provide the opposing party with adequate information for opposing the motion and to define the issues or points for the purpose of summary judgment. *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978); *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 309 (Tex. App.—Fort Worth 1993, no writ).

Whitmire claims that she pleaded fraud and negligent misrepresentation claims on two separate factual grounds— (1) that "the NCHA's revocation of her non-professional status was inconsistent with the representations contained in the NCHA's membership rules," and (2) that "the NCHA, through Goins, misrepresented that Whitmire's non-professional status would be reinstated upon completion of the agreed six month suspension." But her petition does not assert these two grounds as clearly as she contends on appeal.[8] Instead,

---

[8] For example, Whitmire alleged in her petition that the NCHA "made a material representation to Lainie Whitmire that if she paid her membership dues and abided by the NCHA rules, she would be granted her Non-Professional status and NCHA membership." In the next sentence, she alleged, "The NCHA, acting by and through its legal agents and representatives, including . . . Goins, further represented that if Mrs. Whitmire accepted a six (6) month suspension of her NCHA membership benefits, and revocation of her amateur status, her NCHA membership and corresponding Non-Professional status would be reinstated . . . ."

25

her petition appears to assert only one ground for her fraud and negligent misrepresentation claims: Goins's representation that her non-professional status would be reinstated at the end of her six-month membership suspension. After examining Whitmire's pleading, we hold that her petition does not assert two separate, distinct factual grounds for her fraud and negligent misrepresentation claims.

But even assuming that Whitmire's petition sufficiently alleged two distinct and separate grounds for her fraud and negligent misrepresentation claims, the NCHA's summary judgment motion adequately asserted its right to summary judgment on both factual grounds. The portion of the NCHA's summary judgment motion regarding Whitmire's fraud and negligent misrepresentation claims alleged:

> Plaintiff's fraud and negligent misrepresentation claims . . . are based, in part, on the following allegations:
> "The NCHA made a material representation to Lanie [sic] Whitmire that if she paid her membership dues and abided by the NCHA rules, she would be granted her Non-Professional status and NCHA membership."
> (Fourth Amended Petition at ¶¶ 69 and 73)
>
> This portion of Plaintiff's fraud claims is no more than a restatement of Plaintiff's breach of contract claim and should be dismissed as a matter of law. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986). Further, for the reasons stated above, any such claim is barred by the judicial non-intervention doctrine and must be dismissed.

Whitmire argues on appeal that the NCHA's use the phrases "in part" and "[t]his portion" in its summary judgment motion as set forth above makes it clear that the NCHA's motion sought summary judgment based only on her first factual ground for her fraud and negligent misrepresentation claims—that the revocation of her non-professional status was inconsistent with the representations contained in the NCHA's membership rules.

While it is true, as Whitmire contends, that summary judgment cannot be granted except on the grounds expressly presented in the summary judgment motion, the NCHA's motion did specifically set forth its ground for summary judgment—that Whitmire's fraud and negligent misrepresentation claims are simply a restatement of her breach of contract claim. *Johnson,* 73 S.W.3d at 204. Thus, the summary judgment granted for the NCHA was on a ground specifically set forth in its motion—that Whitmire's fraud and negligent misrepresentation claims were simply a restatement of her breach of the oral contract claim. *See Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 863 (Tex. App.—Dallas 2007, no pet.) (holding that defendant's summary judgment motion sufficiently asserted grounds for defeating the entirety of plaintiffs' claims); *see also Schiller v. Lewis*, No. 05-07-00209-CV, 2008 WL 3318884, at *3 (Tex. App.—Dallas Aug. 12, 2008, no pet.) (mem. op.) (holding that summary judgment motion adequately addressed plaintiffs' new claims, which

27

"merely alleged a new reason why" summary judgment was not appropriate). The NCHA's motion for summary judgment put Whitmire on notice and provided her with adequate information for her to oppose its assertion that her fraud and negligent misrepresentation claims were simply restatements of her breach of oral contract claim. *See, e.g.*, *Westchester Fire Ins. Co.*, 576 S.W.2d at 772. And Whitmire does not challenge on appeal the merits of the trial court's summary judgment on these claims; she asserts only that the NCHA did not move for summary judgment on both factual grounds for her fraud and negligent misrepresentation claims. For the reasons set forth above, we hold that no procedural defect exists in the NCHA's motion. We overrule Whitmire's third issue.

## VII. CONCLUSION

The trial court properly granted summary judgment on Whitmire's claims against the NCHA for declaratory judgment, breach of contract for revoking her non-professional and membership status in violation of the NCHA rules, libel, violation of due process, breach of fiduciary duty, fraud, and negligent misrepresentation. However, the trial court improperly granted final summary judgment in favor of the NCHA for Whitmire's breach of contract claim regarding the oral settlement agreement. Accordingly, we affirm the trial

28

court's judgment in part, reverse the trial court's judgment in part, and remand this cause to the trial court for further proceedings consistent with this opinion.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED: July 23, 2009