COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-176-CV

 

 

LAINIE WHITMIRE                                                                APPELLANT

 

                                                   V.

 

NATIONAL CUTTING HORSE                                                    APPELLEE

ASSOCIATION

 

                                              ------------

 

           FROM THE
236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

                                          I.  INTRODUCTION

In three issues, Appellant Lainie Whitmire
appeals the summary judgment entered against her and in favor of Appellee
National Cutting Horse Association (the NCHA). 
We will affirm in part and reverse and remand in part.








                          II.  FACTUAL AND PROCEDURAL BACKGROUND

                                          A.  The NCHA

The NCHA is a non-profit association whose
purpose is Ato encourage, promote, advertise
and develop the cutting horse as a unique and excellent equine athlete.@  The NCHA=s board
of directors has the power to make and amend the NCHA=s rules
and regulations, including rules for the admission, supervision, and expulsion
of members.  Members of the NCHA agree,
as part of their applications, to follow and to be bound by the NCHA rules.

Under the rules, NCHA members may compete in
cutting horse competitions as professionals, non-professionals, or amateurs,
depending on certain qualifications.[2]  The rules provide that any person who has
trained horses astride for direct or indirect remuneration shall be considered
a professional.








Pursuant to NCHA Rule 37, a member may file a
complaint regarding an alleged violation of NCHA rules by providing the NCHA
executive director with a written complaint and a $50.00 filing fee.  Upon receipt, the NCHA president will appoint
a grievance committee to review and to investigate the complaint and, if necessary,
to take disciplinary action against the member. 
The grievance committee=s
decision shall be final and binding unless the member appeals in writing
pursuant to Rule 38.

Rule 38 provides that a member may appeal the
grievance committee=s decision and that the
executive committee or a hearing committee will hold a de novo hearing
regarding the alleged rule violation. 
The executive or hearing committee=s
decision on appeal is final and binding. 
Rule 38 provides, AAny member may be disciplined .
. . whenever it shall have been established by a preponderance of the evidence
that such member or non-member has violated any rule of the Association.@  A member must be given fifteen days= notice
of a time and place for an appeal hearing and an opportunity to be heard at
that hearing.

                         B.  Whitmire=s
Membership in the NCHA








Whitmire was a member of the NCHA and competed in
the amateur class.  In 2004, the NCHA
sent Whitmire a letter informing her that it had concerns regarding her amateur
status and requested detailed information regarding her past employment.  Later that year, on November 1, 2004, the
NCHA sent Whitmire a second letter notifying her that the association had
received information that she previously had trained horses for remuneration in
violation NCHA rules for amateur and non-professional statuses.  Specifically, the letter stated that A[t]he
synopsis of the complaint is that you [Whitmire] have trained barrel horses for
clients and received remuneration for your training.@  The letter informed Whitmire that the NCHA
president had appointed a grievance committee to review and to investigate the
complaint and that a hearing would be held in front of the grievance committee
on November 15, 2004 in order to provide Whitmire an opportunity to be heard.

Whitmire and her attorney, Clark Brewster,
appeared at the hearing.  At the
conclusion of the hearing, the committee decided to revoke Whitmire=s
amateur status.  The committee also
decided to suspend her non-professional status unless, within fifteen days,
Whitmire produced evidence to show her eligibility for non-professional status
and took a polygraph examination concerning her past horse training experience.








Whitmire appealed the grievance committee=s ruling
pursuant to NCHA Rule 38, and an appeal hearing was scheduled for January 19,
2005.  On the day of the hearing,
Brewster and the NCHA=s attorney, E. Eldridge Goins,
Jr., reached an oral settlement agreement. 
Both parties agree that they reached a settlement agreement and that, as
part of the agreement, Whitmire would withdraw all appeals and her membership
would be suspended for six months.  The
parties dispute, however, whether reinstatement of Whitmire=s
non-professional status at the conclusion of the six-month suspension was a
term of the settlement agreement.

Goins subsequently sent Brewster a letter,
purportedly confirming the terms of the settlement agreement.  The letter stated that the parties agreed
that Aall
pending investigations and appeals are hereby ceased,@ that
Whitmire=s NCHA
membership would be suspended for six months, and that Whitmire=s
amateur and non-professional statuses would be revoked.  The letter did not mention reinstatement of
Whitmire=s
non-professional status.  Whitmire
contends, however, that Brewster contacted Goins after receiving the letter and
that Goins assured him that, contrary to the terms in the letter, Whitmire
would be eligible for reinstatement of her non-professional status at the end
of her six-month membership suspension. 
The letter did not provide a signature line for Brewster or Whitmire,
and they did not otherwise respond in writing.








Sometime after the six-month membership
suspension period had ended, Whitmire applied for reinstatement of her
non-professional status.  The NCHA denied
her application due to ineligibility.  In
a letter dated March 2, 2006, Whitmire=s new
attorney, James Walker, requested reconsideration of Whitmire=s
application for non-professional status and an appeal to the NCHA executive
committee if her application was denied for a second time.  The NCHA again denied Whitmire=s
application and recommended that her NCHA privileges be revoked for one year
because it claimed that she had made false statements in her application.  Whitmire appealed this decision, and in
August 2006 the NCHA held a hearing on her appeal; Whitmire appeared with her
attorney, Walker.  At the hearing, Walker
acknowledged that the parties had previously reached a settlement agreement,
although he did not detail the terms of that agreement, i.e., whether or not
they had agreed that Whitmire=s
non-professional status would ultimately be reinstated.  After the hearing, the executive committee
denied Whitmire=s application for
non-professional status and suspended her NCHA membership for one year.  The NCHA notified Whitmire that she could
appeal the executive committee=s
decision, but she declined to do so. 








In October 2006, Whitmire filed suit against the
NCHA, asserting claims for declaratory judgment,[3]
for breach of contract regarding both the oral settlement agreement (which
Whitmire claimed included the provision that her non-professional status would
be reinstated after her six-month suspension) and the NCHA membership contract,
and for fraud and negligent misrepresentation. 
Whitmire asserted a libel claim alleging that the NCHA published that
she had violated NCHA rules in an official NCHA publication.  She also asserted claims for violations of
due process and breach of fiduciary duty based on the NCHA=s
disciplinary actions against her. 
Finally, she asserted claims for false imprisonment and intentional
infliction of emotional distress based on facts not relevant to this appeal.

Sometime after Whitmire filed this lawsuit, the
NCHA notified her that a hearing had been scheduled to determine whether to
indefinitely terminate her membership and requested her attendance at the
hearing.  Whitmire did not appear at the
hearing, and the NCHA executive committee revoked her membership.  Whitmire did not appeal this ruling.








In response to Whitmire=s
lawsuit, the NCHA filed a motion for summary judgment based on the doctrine of
judicial non-intervention.  Specifically,
the NCHA claimed that Whitmire=s claims
for declaratory judgment, breach of contract, fraud, negligent
misrepresentation, violation of due process, violation of fiduciary duty,
libel, and intentional infliction of emotional distress arose from disciplinary
proceedings for Whitmire=s violation of NCHA rules and
that these claims are barred by the judicial non-intervention doctrine.  The NCHA also filed a supplemental
traditional and no-evidence motion for summary judgment regarding Whitmire=s claims
for breach of the oral settlement agreement and false imprisonment.  The trial court granted summary judgment in
favor of the NCHA on all of Whitmire=s claims
except false imprisonment and intentional infliction of emotional distress; the
trial court ordered those claims severed, and Whitmire perfected this appeal.

                                    III.  STANDARDS OF REVIEW

                             A.  NO-EVIDENCE SUMMARY JUDGMENT

After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d
193, 207 (Tex. 2002).  The trial court
must grant the motion unless the nonmovant produces summary judgment evidence
that raises a genuine issue of material fact. 
See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002).








When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that raises
a genuine issue of material fact, then a no-evidence summary judgment is not
proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  We review a
no‑evidence summary judgment for evidence that would enable reasonable
and fair‑minded jurors to differ in their conclusions.  Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005)).

                             B.  Traditional Summary Judgment

A defendant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).








                           IV.  JUDICIAL NON-INTERVENTION DOCTRINE

In her first issue, Whitmire argues that the
trial court erred by granting summary judgment for the NCHA based on the
judicial non-intervention doctrine.  She
claims that the doctrine does not apply to her claims for declaratory judgment,
breach of contract, fraud, negligent misrepresentation, violation of due
process, violation of fiduciary duty, and libel.  Specifically, Whitmire contends that a
genuine issue of material fact exists as to whether the NCHA complied with its
own rules.








Traditionally, courts are not disposed to
interfere with the internal management of a voluntary association.  Harden v. Colonial Country Club, 634
S.W.2d 56, 59 (Tex. App.CFort Worth 1982, writ ref=d
n.r.e.).  By becoming a member, a person
subjects himself, within legal limits, to the organization=s power
to make and administer its rules.  Id.  Thus, courts will not interfere with the
internal management of voluntary associations so long as the governing bodies
of those associations do not substitute legislation for interpretation and do
not overstep the bounds of reason or violate public policy or the laws of the
state.  See Dickey v. Club Corp. of Am.,
12 S.W.3d 172, 176 (Tex. App.CDallas
2000, pet. denied); Burge v. Am. Quarter Horse Ass=n, 782
S.W.2d 353, 355 (Tex. App.CAmarillo
1990, no writ); Butler v. Hide‑A‑Way Lake Club, Inc., 730
S.W.2d 405, 410 (Tex. App.CEastland
1987, writ ref=d n.r.e.); Harden, 634
S.W.2d at 59; Adams v. Am. Quarter Horse Ass=n, 583
S.W.2d 828, 834 (Tex. Civ. App.CAmarillo
1979, writ ref=d n.r.e.); Hoey v. San
Antonio Real Estate Bd., 297 S.W.2d 214, 217 (Tex. Civ. App.CSan
Antonio 1956, no writ); Bhd. of R.R. Trainmen v. Price, 108 S.W.2d 239,
241 (Tex. Civ. App.CGalveston 1937, writ dism=d).  Judicial review is only proper when the
actions of the organization are illegal, against some public policy, arbitrary,
or capricious.  Harden, 634 S.W.2d
at 60; Butler, 730 S.W.2d at 410.

Accordingly, Texas common law severely limits
review of a private association=s
actions.  Dallas County Med. Soc=y v.
Ubinas Brache, 68 S.W.3d 31, 41 (Tex. App.CDallas
2001, pet. denied), cert. denied, 535 U.S. 970 (2002).  Courts have gone so far as to state that they
will not review a private association=s
failure to conduct its business according to its own procedures except for the
purpose of protecting some civil or property right.  Id. at 41B42; Price,
108 S.W.2d at 241.








In this case, the NCHA attached to its summary
judgment motion the affidavit of the NCHA executive director, Jeff Hooper.  In his affidavit, Hooper stated that Athe
rules and regulations of the NCHA . . . were consistently applied in dealing
with any and all complaints against Lainie Whitmire.@  Hooper stated that the association received a
complaint against Whitmire Aas
prescribed by NCHA rules,@ that it notified Whitmire of
the complaint and provided her an opportunity to respond to the charges against
her Aas
prescribed by NCHA rules,@ that a grievance committee was
empaneled Ain accordance with NCHA Rule 37,@ that
Whitmire received notice of the hearing before the grievance committee and
attended it with her attorney, and that Whitmire requested an appeal of the
grievance committee=s decision pursuant to Rule 38.

Whitmire contends that the summary judgment
evidence contradicts Hooper=s
affidavit and instead demonstrates that the NCHA violated its own rules in
investigating and in punishing Whitmire. 
Whitmire specifically argues that the summary judgment evidence shows
that the NCHA (1) did not receive a formal complaint in accordance with NCHA
Rule 37, (2) did not comply with Rule 38=s
requirement that a preponderance of the evidence establish a member=s rule
violation before that member may be punished and instead placed the burden of
proof on Whitmire, and (3) found that Whitmire violated NCHA rules for
activities not prohibited under the association=s rules.








But the NCHA has the right to interpret its own
agreements, such as its bylaws and rules. 
See Burge, 782 S.W.2d at 355. 
By voluntarily becoming a member of the NCHA, Whitmire agreed to be
bound by its rules and the NCHA=s power
to make and administer its rules.  See
Dickey, 12 S.W.3d at 177; Lawrence v. Ridgewood Country Club, 635
S.W.2d 665, 667 (Tex. App.CWaco
1992, writ ref=d n.r.e.).  Nothing in the record suggests that the NCHA=s
actions toward Whitmire were illegal, against public policy, arbitrary, or
capricious.  See Harden, 634
S.W.2d at 60; Butler, 730 S.W.2d at 410. 
Whitmire received notice of the complaint against her and fifteen days= notice
of a hearing on that complaint and was afforded a right to be heard and to
present evidence at that hearing.  She
appeared at the hearing and called herself and one other witness to testify on
her behalf.  She also exercised her right
to appeal the outcome of that hearing and presented evidence at the appeal
hearing.  After being subsequently denied
reinstatement of her non-professional status, she requested and received review
of her denial by the non-professional committee and review of that committee=s
determination before the executive committee. 
She received over a month=s notice
of a hearing before the executive committee, was informed of her right to
appear and to present evidence at that hearing, and did in fact appear at that
hearing with her attorney.








Whitmire=s
appellate complaints about the procedures utilized by the NCHA are exactly the
type of complaints in which Texas courts have declined to intervene.  See Tex. Thoroughbred Breeders Ass=n v.
Donnan, 202 S.W.3d 213, 225 (Tex. App.CTyler
2006, pet. denied); see also Ubinas Brache, 68 S.W.3d at 42B43
(noting that Athe requirements for judicial
review are more than a mere breach of [the association=s] own
policies@).  Whitmire=s
complaints address the technical aspect of the NHCA=s
application of its rules to her but do not allege a wholesale deprivation of
due process or the opportunity to be heard in violation of some civil or
property right.  Compare Juarez
v. Tex. Ass=n of Sporting Officials El Paso
Chapter, 172 S.W.3d 274, 280 (Tex. App.CEl Paso
2005, no pet.) (holding judicial non-intervention doctrine would apply so long
as actions of board of directors were not illegal, against public policy,
arbitrary, capricious, or fraudulent), and Burge, 782 S.W.2d at
356 (declining to interfere in association=s
private affairs when appellant received notice and hearing), with Hatley
v. Am. Quarter Horse Ass=n, 552
F.2d 646, 656 (5th Cir. 1977) (holding that executive committee=s
decision to refuse registration without a hearing violated due process).








For
these reasons, we will decline to interfere in the right of the NCHA to govern
its own affairs.  Consequently, we hold
that the trial court did not err by granting summary judgment for the NCHA on
Whitmire=s claims
for declaratory judgment, breach of contract for revoking her non-professional
and membership statuses in violation of NCHA rules,[4]
fraud and negligent misrepresentation to the extent that they involve the
general allegation that the NCHA made certain representations to her in the
course of its business,[5]
libel, violation of due process, and breach of fiduciary duty.  We overrule Whitmire=s first
issue.

                                 V.  BREACH OF ORAL CONTRACT

In her second issue, Whitmire argues that the
trial court erred by granting summary judgment for the NCHA on her breach of
contract claim regarding the oral settlement agreement.  Whitmire claims that the NCHA breached the
oral settlement agreement by refusing to reinstate her non-professional status
after her six-month suspensionCwhich
she claims was a term of the oral settlement agreement.








The NCHA moved for both a no-evidence and a
traditional summary judgment on Whitmire=s breach
of contract, i.e., the oral settlement agreement, claim.  The trial court=s order
granting summary judgment in favor of the NCHA does not specify the basis for
its ruling.  Therefore, because the NCHA
moved for summary judgment on both traditional and no-evidence grounds and
because the trial court did not specify the grounds on which it was granted, we
will uphold the summary judgment if any one of the grounds advanced in either
of the motions is meritorious.  See
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

When a party moves for summary judgment under
both rules 166a(c) and 166a(i), we will first review the trial court=s
judgment under the standards of rule 166a(i). 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  If the appellant failed to produce more than
a scintilla of evidence under that burden, then there is no need to analyze
whether the appellee=s summary judgment proof
satisfied the less stringent rule 166a(c) burden.  Id.

               A.  Analysis of No-Evidence Summary Judgment
Motion

In its no-evidence motion, the NCHA alleged that
no evidence exists that an authorized agent of the NCHA, while acting within
the course and scope of his authority, agreed to a reinstatement of Whitmire=s
non-professional status as a term of the oral settlement agreement or that the
NCHA ratified or approved any oral settlement agreement including that term.








Generally, a principal will be liable for the
acts of its agent only if the acts are within the agent=s
authority or if the principal ratifies the acts.  See Elliot Valve Repair Co. v. B.J. Valve
& Fitting Co., 675 S.W.2d 555, 560B61 (Tex.
App.CHouston
[1st Dist.]), rev=d on
other grounds, 679 S.W.2d 1 (Tex. 1984).  If an agent acts within the scope of his
authority, both the agent and the principal may be liable.  Wynne v. Adcock Pipe & Supply, 761
S.W.2d 67, 69 (Tex. App.CSan Antonio 1988, writ
denied).  The burden of proving that an
agency relationship exists is on the party asserting the existence of the
relationship. See Tex. Cityview Care Center LP v. Fryer, 227 S.W.3d 345,
352 (Tex. App.CFort Worth 2007, pet. dism=d); Sanders
v. Total Heat & Air, Inc., 248 S.W.3d 907, 913 (Tex. App.CDallas
2008, no pet.).

An attorney retained for litigation is presumed
to possess actual authority to enter into a settlement on behalf of a
client.  City of Roanoke v. Town of
Westlake, 111 S.W.3d 617, 628 (Tex. App.CFort
Worth 2003, pet. denied).  This
presumption may be rebutted by affirmative proof that the client did not authorize
his attorney to enter into the settlement. 
Walden v. Sanger, 250 S.W.2d 312, 316 (Tex. Civ. App.CAustin
1952, no writ); Johnson v. Rancho Guadalupe, Inc., 789 S.W.2d 596, 598
(Tex. App.CTexarkana 1990, writ denied); Fail
v. Lee, 535 S.W.2d 203, 207B08 (Tex.
Civ. App.CFort Worth 1976, no writ)
(affirming summary judgment enforcing settlement agreement absent proof that
defendant did not authorize his attorney to settle).








 In this
case, the summary judgment evidence establishes, and neither party contests,
that Goins represented the NCHA in its dispute with Whitmire.  Thus, a presumption exists that Goins, as the
attorney for the NCHA, had actual authority to enter into a settlement
agreement with Whitmire on behalf of the NCHA. 
See City of Roanoke, 111 S.W.3d at 628.  The summary judgment evidence also
establishesCand the NCHA does not disputeCthat the
NCHA, at a minimum, had authorized Goins to settle the dispute pursuant to the
terms of the letter from Goins to Brewster. 
Thus, in light of the presumption that Goins was acting with actual
authority as the attorney for the NCHA, the NCHA bore the burden to come
forward with summary judgment evidence that Goins was not authorized to include
in the oral settlement agreement the provision that Whitmire=s
non-professional status would be reinstated after her six-month membership
suspension.  See City of Roanoke,
111 S.W.3d at 630 (recognizing that AWestlake
rebutted the presumption by clear and uncontradicted summary judgment evidence
by proving that its attorney of record was never authorized by valid action of
the governing body of Westlake to settle, nor was he clothed with apparent
authority@).








Because the NCHA bore the burden of proof to
rebut the presumption that Goins was authorized by the NCHA to include in the
oral settlement agreement the provision that Whitmire=s
non-professional status would be reinstated after her six-month suspension,
this issue cannot form the basis of a no-evidence summary judgment motion.  See Tex. R. Civ. P. 166a(i) (providing
that the party without the burden of proof may, without presenting evidence,
move for summary judgment).  Accordingly,
we hold that to the extent the trial court based its summary judgment for the
NCHA on the NCHA=s no-evidence motion, the trial
court erred.

                B.  Analysis of Traditional Summary Judgment
Motion

In its traditional motion for summary judgment,
the NCHA asserted that the summary judgment evidence conclusively establishes
that Goins lacked the actual authority to include in the oral settlement agreement
the provision that Whitmire=s
non-professional status would be reinstated at the conclusion of her six-month
membership suspension.  The summary
judgment evidence that the NCHA contends conclusively establishes this fact is
the deposition testimony and the affidavit of former NCHA president Don
Bussey.  Bussey testified at his
deposition that the NCHA=s executive board authorized
Goins to settle the dispute with Whitmire according to the terms of the letter
that Goins sent to Brewster.  Bussey
testified that Goins showed a draft of the letter to the executive board and
asked if the board would agree to those terms. 
On cross-examination, however, Bussey testified that Awhat
[he] saw was not addressed to Mr. Brewster. 
[He] only saw the outline of the settlement.@  The NCHA could not produce the outline to
which Bussey had referred, and Bussey later contradicted several portions of
his deposition testimony in his summary judgment affidavit.  He stated in his affidavit, 








It is my understanding
that based upon certain testimony taken at [my deposition] that Plaintiff=s counsel is under the
mistaken impression that I testified as to the existence of a document
containing the same information as a document identified as Exhibit 105 [the
letter from Goins to Brewster] but in a different form.  I did not testify that there was a document
but that I was familiar with the terms that was [sic] in document 105.  Whether this was verbal or in another
document, I cannot testify to.  The only
document I have seen containing any terms, proposed or otherwise as to a
settlement . . . was the document identified as Exhibit 105.  I have seen no other form of this document
nor do I know the existence of one.

 

It is a well-established rule that a deposition
does not have controlling effect over an affidavit in determining whether a
motion for summary judgment should be granted. 
See Randall v. Dallas Power & Light Co., 752 S.W.2d 4, 5
(Tex. 1988).  Thus, if conflicting
inferences may be drawn from a deposition and from an affidavit filed by the
same party in opposition to a motion for summary judgment, a fact issue is
presented.  Id.; Hale v. Pena,
991 S.W.2d 942, 946B47 (Tex. App.CFort
Worth 1999, no pet.).








In this instance, Bussey=s
affidavit contradicts his deposition testimony and creates a fact issue
regarding whether the executive board approved the settlement terms contained
in the letter or in an outline that the NCHA was unable to produce.  See Randall, 752 S.W.2d at 5; Hale,
991 S.W.2d at 946B47.  Bussey did not testify that the NCHA did not
approve a term in the oral settlement agreement concerning the reinstatement of
Whitmire=s
non-professional status at the conclusion of her six-month suspension, and the
NCHA failed to produce any other summary judgment evidence to negate or rebut
the presumption that Goins was authorized to include in the oral settlement
agreement a provision that Whitmire=s
non-professional status would be reinstated at the conclusion of her six-month
suspension.  See Mason, 143 S.W.3d
at 798; City of Roanoke, 111 S.W.3d at 628.

The NCHA further asserted as a basis for its
traditional motion for summary judgment that the letter from Goins to Brewster
was a binding settlement agreement and did not include the term concerning
reinstatement of Whitmire=s non-professional status.  But neither Whitmire nor her attorney signed
the letter, only Goins signed it.  See,
e.g., In re Bunzl USA, Inc., 155 S.W.3d 202, 209 (Tex. App.CEl Paso
2004, no pet.) (noting that in absence of signature, other evidence must be
relied upon to prove party=s
unconditional assent to terms of written contract).  In fact, the letter did not even contain a
signature line for Whitmire or her attorney.








In support of its contention that the summary
judgment evidence conclusively establishes that Goins=s letter
constituted a binding settlement agreement, the NCHA also relies on the
transcript from one of the hearings on Whitmire=s
non-professional status.  The NCHA argues
that Whitmire=s attorney, Walker, Ain
[Whitmire=s] presence acknowledged that
the January 19, 2005 Settlement Agreement was a binding agreement and made no
mention at the time of any alleged oral agreement.@  But the transcript of that hearing reveals
that Walker agreed only that the parties had reached a binding agreement; he
did not detail the terms of that agreement and could have been referring to the
oral settlement agreement.[6]








Finally, as summary judgment evidence that the
letter constituted a binding settlement agreement, the NCHA points to evidence
that at the conclusion of Whitmire=s
six-month suspension she reapplied for her non-professional status, rather than
demanding automatic reinstatement.  The
NCHA asserted that this evidence shows that Whitmire had Aacted in
accordance with the terms of the [letter] for well over a year.@  But Whitmire explained in her deposition that
after her six-month suspension had ended, she waited to receive confirmation
that her non-professional status had been automatically reinstated but that she
ultimately reapplied after she did not hear anything about her reinstatement.  When asked why she reapplied instead of
asking the NCHA to abide by their oral settlement agreement, Whitmire testified
that she Athought that [she] could work
through the system and, without it involving attorneys and a bunch of expenses,
get [her] non-pro card back.@

To controvert these contentions by the NCHA,
Whitmire produced summary judgment evidence consisting of deposition testimony
from herself and from Brewster that Goins, as the attorney for the NCHA, orally
agreed that if she would stop all appeals and agree to a six-month membership
suspension and revocation of her amateur status, the NCHA would reinstate her
non-professional status at the expiration of that six-month suspension.








In sum, taking as true all evidence favorable to
Whitmire, indulging every reasonable inference in her favor, and resolving any
doubts in her favor, we hold that the NCHA has not conclusively proven that
Goins lacked the authority to offer reinstatement of Whitmire=s
non-professional status as part of the oral settlement agreement or that the
terms of the oral settlement agreement were as stated in Goins=s letter
and did not include the provision that at the conclusion of Whitmire=s
six-month suspension her non-professional status would be reinstated.[7]  See Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).  We hold
that the trial court erred by granting summary judgment in favor of the NCHA on
Whitmire=s breach
of contract claim regarding the oral settlement agreement.  We sustain Whitmire=s second
issue.

                   VI.  FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS

In her third issue, Whitmire argues that the
trial court erred by granting summary judgment for the NCHA on her fraud and
negligent misrepresentation claims. 
Whitmire does not challenge the merits of the trial court=s
summary judgment on these claims but instead asserts a purely procedural point
on appeal.  Whitmire argues that she
asserted two separate factual grounds for her fraud and negligent
misrepresentation claims and contends that the NCHA sought summary judgment
only with respect to one factual ground for each claim.








Summary judgment cannot be granted except on the
grounds expressly presented in the motion. 
Johnson, 73 S.W.3d at 204; Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 912 (Tex. 1997).  In
determining whether grounds are expressly presented, reliance may not be placed
on briefs or summary judgment evidence.  McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).  The purpose of this requirement is to provide
the opposing party with adequate information for opposing the motion and to
define the issues or points for the purpose of summary judgment.  Westchester Fire Ins. Co. v. Alvarez,
576 S.W.2d 771, 772 (Tex. 1978); Camden Mach. & Tool, Inc. v. Cascade
Co., 870 S.W.2d 304, 309 (Tex. App.CFort
Worth 1993, no writ).








Whitmire claims that she pleaded fraud and
negligent misrepresentation claims on two separate factual groundsC(1) that
Athe NCHA=s
revocation of her non-professional status was inconsistent with the
representations contained in the NCHA=s
membership rules,@ and (2) that Athe
NCHA, through Goins, misrepresented that Whitmire=s
non-professional status would be reinstated upon completion of the agreed six
month suspension.@ 
But her petition does not assert these two grounds as clearly as she
contends on appeal.[8]  Instead, her petition appears to assert only
one ground for her fraud and negligent misrepresentation claims: Goins=s representation
that her non-professional status would be reinstated at the end of her
six-month membership suspension.  After
examining Whitmire=s pleading, we hold that her
petition does not assert two separate, distinct factual grounds for her fraud
and negligent misrepresentation claims.

But even assuming that Whitmire=s
petition sufficiently alleged two distinct and separate grounds for her fraud
and negligent misrepresentation claims, the NCHA=s
summary judgment motion adequately asserted its right to summary judgment on
both factual grounds.  The portion of the
NCHA=s
summary judgment motion regarding Whitmire=s fraud
and negligent misrepresentation claims alleged:

Plaintiff=s fraud and negligent
misrepresentation claims . . . are based, in part, on the following
allegations:

AThe NCHA made a material
representation to Lanie [sic] Whitmire that if she paid her membership dues and
abided by the NCHA rules, she would be granted her Non-Professional status and
NCHA membership.@  (Fourth Amended Petition at && 69 and 73)

 

This portion of Plaintiff=s fraud claims is no more than a restatement of
Plaintiff=s breach of contract
claim and should be dismissed as a matter of law.  Jim Walter Homes, Inc. v. Reed, 711
S.W.2d 617, 618 (Tex. 1986).  Further,
for the reasons stated above, any such claim is barred by the judicial
non-intervention doctrine and must be dismissed.

 








Whitmire argues on appeal that the NCHA=s use
the phrases Ain part@ and A[t]his
portion@ in its
summary judgment motion as set forth above makes it clear that the NCHA=s motion
sought summary judgment based only on her first factual ground for her fraud
and negligent misrepresentation claimsCthat the
revocation of her non-professional status was inconsistent with the
representations contained in the NCHA=s
membership rules.








While it is true, as Whitmire contends, that
summary judgment cannot be granted except on the grounds expressly presented in
the summary judgment motion, the NCHA=s motion
did specifically set forth its ground for summary judgmentCthat
Whitmire=s fraud
and negligent misrepresentation claims are simply a restatement of her breach
of contract claim.  Johnson, 73
S.W.3d at 204.  Thus, the summary
judgment granted for the NCHA was on a ground specifically set forth in its
motionCthat
Whitmire=s fraud
and negligent misrepresentation claims were simply a restatement of her breach
of the oral contract claim.  See
Fiengo v. Gen. Motors Corp., 225 S.W.3d 858, 863 (Tex. App.CDallas
2007, no pet.) (holding that defendant=s
summary judgment motion sufficiently asserted grounds for defeating the
entirety of plaintiffs= claims); see also Schiller
v. Lewis, No. 05-07-00209-CV, 2008 WL 3318884, at *3 (Tex. App.CDallas
Aug. 12, 2008, no pet.) (mem. op.) (holding that summary judgment motion
adequately addressed plaintiffs= new
claims, which Amerely alleged a new reason why@ summary
judgment was not appropriate).  The NCHA=s motion
for summary judgment put Whitmire on notice and provided her with adequate
information for her to oppose its assertion that her fraud and negligent
misrepresentation claims were simply restatements of her breach of oral
contract claim.  See, e.g., Westchester
Fire Ins. Co., 576 S.W.2d at 772. 
And Whitmire does not challenge on appeal the merits of the trial court=s
summary judgment on these claims; she asserts only that the NCHA did not move
for summary judgment on both factual grounds for her fraud and negligent
misrepresentation claims.  For the
reasons set forth above, we hold that no procedural defect exists in the NCHA=s
motion.  We overrule Whitmire=s third
issue.

                                          VII.  CONCLUSION








The trial court properly granted summary judgment
on Whitmire=s claims against the NCHA for
declaratory judgment, breach of contract for revoking her non-professional and
membership status in violation of the NCHA rules, libel, violation of due
process, breach of fiduciary duty, fraud, and negligent misrepresentation.  However, the trial court improperly granted
final summary judgment in favor of the NCHA for Whitmire=s breach
of contract claim regarding the oral settlement agreement.  Accordingly, we affirm the trial court=s
judgment in part, reverse the trial court=s
judgment in part, and remand this cause to the trial court for further
proceedings consistent with this opinion.

 

 

SUE
WALKER

JUSTICE

 

PANEL: CAYCE, C.J.;
DAUPHINOT and WALKER, JJ.

 

DELIVERED: July 23, 2009











[1]See Tex. R. App. P. 47.4.





[2]For example, to compete
as a non-professional, the member must not have received direct or indirect
remuneration for showing, training, or assisting in training at a cutting horse
operation.  To compete as an amateur, a
member must not have ridden horses or trained horses or horse riders for direct
or indirect remuneration or assisted in training horses or horse riders for
remuneration in the last ten years.





[3]Specifically, Whitmire
requested declaratory judgment that (1) she qualifies as a non-professional
under the NCHA rules because she has never trained horses astride for direct or
indirect remuneration; (2) the NCHA cannot recover attorney=s fees pursuant to NCHA
Rule 41, which provides that the NCHA may recover attorney=s fees when a member
institutes litigation against the NCHA, Ain light of the NCHA=s concurrent insistence
upon the fact that she is not an NCHA member@; and (3) certain provisions of the NCHA=s constitution and bylaws
are vague, ambiguous, overbroad, and do not support the NCHA=s actions against
Whitmire.





[4]We will address
separately below Whitmire=s breach of contract
claim regarding the oral settlement agreement.





[5]We will address
separately below Whitmire=s fraud and negligent
representation claims for statements Goins allegedly made to Brewster regarding
reinstatement of Whitmire=s non-professional
status.





[6]The following exchange
took place between Walker and Goins at this hearing: 

 

Mr. Walker:  And it=s this exception that has also been used as a bar
to her coming back as a Non-Pro, even having accepted the six-month suspension
based upon an agreement that was reached between Mr. Brewster as her counsel
and Mr. Goins as y=all=s counsel.  That=s just an agreement reached between counsel,
basically to try to smooth things over and end the fight.

 

Mr. Goins:  Wait a minute.  Are you saying it wasn=t binding, that she didn=t agree to it and the
association didn=t agree to it?

 

. . . . 

 

Mr. Walker:  I=m not denying that it was
binding, sir.





[7]It is hard to imagine
that Whitmire, who was appealing the revocation of her amateur status and
suspension of her non-professional status, would have Asettled@ her dispute with the
NCHA by agreeing to a revocation of her amateur and non-professional statuses and
a six-month suspension.





[8]For example, Whitmire
alleged in her petition that the NCHA Amade a material representation to Lainie Whitmire
that if she paid her membership dues and abided by the NCHA rules, she would be
granted her Non-Professional status and NCHA membership.@  In the next sentence, she alleged, AThe NCHA, acting by and
through its legal agents and representatives, including . . . Goins, further
represented that if Mrs. Whitmire accepted a six (6) month suspension of her
NCHA membership benefits, and revocation of her amateur status, her NCHA
membership and corresponding Non-Professional status would be reinstated . . .
.@